**FILED**

July 08, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ lad

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

BEBA LLC and DEFI EDUCATION FUND,

                    Plaintiffs,

v.

SECURITIES AND EXCHANGE
COMMISSION,

                    Defendant.

C.A. No.: 6:24-cv-00153-ADA-DTG

**DEFENDANT'S MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................1

STANDARD OF REVIEW .............................................................................................4

ARGUMENT ..................................................................................................................5

I.     This Court lacks jurisdiction because sovereign immunity bars plaintiffs' suit........................ 5

       A.     Section 702 does not waive sovereign immunity for the APA claim.............................6

       B.     Section 702 does not waive sovereign immunity for Beba's DJA request..................10

       C.     Plaintiffs challenge matters committed to the Commission's discretion ....................14

II.    Plaintiffs' complaint does not present a justiciable case or controversy ...................................15

       A.     Plaintiffs have not alleged a justiciable APA claim ......................................................16

              1.     The APA claim is not ripe ...................................................................................16

              2.     Plaintiffs lack standing.........................................................................................17

                     i.     DEF lacks standing...................................................................................17

                     ii.    Beba lacks standing ..................................................................................19

       B.     Beba has not alleged a justiciable request for relief under the DJA...........................  20

              1.     The request for DJA relief is not ripe ................................................................20

                     i.     The issues presented are not ripe for judicial decision .......................20

                     ii.    Any cognizable harm to Beba from withholding judicial review
                            does not justify judicial intervention at this juncture ..........................24

              2.     Beba lacks standing...............................................................................................25

CONCLUSION.................................................................................................................27

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Alabama-Coushatta Tribe of Tex. v. United States,*
    757 F.3d 484 (5th Cir. 2014) .................................................... 5, 6, 9, 11, 12, 13

*Am. Fed'n of Gov't Emps. v. O'Connor,*
    747 F.2d 748 (D.C. Cir. 1984) ..................................................................22

*Am. Tort Reform Ass'n v. OSHA,*
    738 F.3d 387 (D.C. Cir. 2013) ..................................................................16

*AT&T Corp. v. FCC,*
    349 F.3d 692 (D.C. Cir. 2003) ..................................................................25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................12

*Aulenback, Inc. v. Fed. Highway Admin.,*
    103 F.3d 156 (D.C. Cir. 1997) ..................................................................21

*Bennett v. Spear,*
    520 U.S. 154 (1997) ...............................................................................9, 10

*Block v. SEC,*
    50 F.3d 1078 (D.C. Cir. 1995) ...................................................................2

*Calderon v. Ashmus,*
    523 U.S. 740 (1998) ...................................................................................23

*Cent. & S.W. Servs. v. EPA,*
    220 F.3d 683 (5th Cir. 2000) ....................................................................20

*Choice Inc. v. Greenstein,*
    691 F.3d 710 (5th Cir. 2012) ....................................................................16

*Christopher Village, Ltd. Partnership v. Retsinas Inc.,*
    190 F.3d 310 (5th Cir. 1999) ....................................................................14

*Ciba-Geigy Corp. v. EPA, as amended* (Sept. 9, 1986),
    801 F.2d 430 (D.C. Cir. 1986) ...........................................................21, 22

*City of Oakland v. Holder,*
    901 F. Supp. 2d 1188 (N.D. Cal. 2013) ...................................................12

*City of Oakland v. Lynch,*
    798 F.3d 1159 (9th Cir. 2015) ..................................................................12

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ...................................................................................26

*Cleartrac, L.L.C. v. Lanrick Contrs., L.L.C.,*
    53 F.4th 361 (5th Cir. 2022) ........................................................................................5

*Common Cause v. Dep't of Energy,*
    702 F.2d 245 (D.C. Cir. 1983) ............................................................................18-19

*Cornerstone Christian Schs v. Univ. Interscholastic League,*
    563 F.3d 127 (5th Cir. 2009) ....................................................................................15

*Ctr. for Auto Safety & Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,*
    452 F.3d 798 (D.C. Cir. 2006) ..................................................................................10

*Ctr. for Individual Freedom v. Carmouche,*
    449 F.3d 655 (5th Cir. 2006) ....................................................................................26

*Daniel v. Univ. of Tex. Sw. Med. Ctr.,*
    960 F.3d 253 (5th Cir. 2020) ......................................................................................2

*DM Arbor Court, Ltd. v. City of Hous.,*
    988 F.3d 215 (5th Cir. 2021) ....................................................................................23

*Doe v. Columbia-Brazoria Indep. Sch. Dist.,*
    855 F.3d 681 (5th Cir. 2017) ......................................................................................4

*Energy Transfer Partners, L.P. v. FERC,*
    567 F.3d 134 (5th Cir. 2009) ...............................................................................23-24

*FDA v. All. for Hippocratic Med.,*
    No. 23-235, 2024 WL 2964140 (U.S. June 13, 2024) ........................................17, 18, 25

*FDIC v. Meyer,*
    510 U.S. 471 (1994) ..................................................................................................5

*FTC v. Standard Oil Co.,*
    449 U.S. 232 (1980) ....................................................................................13, 24, 25

*Gabelli v. SEC,*
    568 U.S. 442 (2013) ..................................................................................................2

*Gentile v. SEC,*
    974 F.3d 311 (3d Cir. 2020) ..................................................................................2, 15

*Google, Inc. v. Hood,*
    822 F.3d 212 (5th Cir. 2016) ....................................................................................23

*Gulf Restoration Network v. McCarthy,*
    783 F.3d 227 (5th Cir. 2015) ....................................................................................14

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ..........................................................................................2, 14, 15

*Hodl L., P.L.L.C. v. SEC,*
   No. 22-cv-1832, 2023 WL 4852322 (S.D. Cal. July 28, 2023) .................................................... 22, 26

*Hodl L., PLLC v. SEC,*
   No. 23-55810 (*appeal pending* 9th Cir. 2023) ....................................................................................22

*Hosein v. Gonzales,*
   452 F.3d 401 (5th Cir. 2006) ................................................................................................................21

*Huawei Techs. USA, Inc. v. FCC,*
   2 F.4th 421 (5th Cir. 2021) ...................................................................................................................15

*Koehler v. U.S., IRS,*
   153 F.3d 263 (5th Cir. 1998) ...................................................................................................................6

*Kokesh v. SEC,*
   581 U.S. 455 (2017) ..................................................................................................................................1

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ..................................................................................................................................4

*Lopez v. City of Hous.,*
   617 F.3d 336 (5th Cir. 2010) ................................................................................................................16

*Louisiana v. United States,*
   948 F.3d 317 (5th Cir. 2020) ................................................................................................................11

*Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.,*
   82 F.4th 345 (5th Cir. 2023) .................................................................................................................18

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ................................................................................................................................20

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) .............................................................................................................................9, 12

*Luminant Generation Co. v. EPA,*
   757 F.3d 439 (5th Cir. 2014) ................................................................................................................10

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ................................................................................................................................25

*Murthy v. Missouri,*
   No. 23-411, 2024 WL 3165801 (U.S. June 26, 2024) .......................................................................15

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003) ...................................................................................................................16, 23, 24

*Nat'l Pork Producers Council v. EPA,*
   635 F.3d 738 (5th Cir. 2011) ................................................................................................................10

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,*
  366 F.3d 930 (D.C. Cir. 2004) ............................................................................18

*Ohio Forestry Ass'n v. Sierra Club,*
  523 U.S. 726 (1998) ........................................................................... 16, 24, 25

*Orix Credit All., Inc. v. Wolfe,*
  212 F.3d 891 (5th Cir. 2000) ......................................................................21, 22

*Physician Hosps. of Am. v. Sebelius,*
  691 F.3d 649 (5th Cir. 2012) ..............................................................................5

*Preseault v. ICC,*
  494 U.S. 1 (1990) ................................................................................................6

*Pub. Serv. Comm'n of Utah v. Wycoff Co.,*
  344 U.S. 237 (1952) ..........................................................................................23

*Rivera v. Wyeth-Ayerst Lab'ys,*
  283 F.3d 315 (5th Cir. 2002) ............................................................................25

*Sample v. Morrison,*
  406 F.3d 310 (5th Cir. 2005) ............................................................................15

*SEC v. Citigroup Glob. Mkts.,*
  752 F.3d 285 (2d Cir. 2014) ........................................................................2, 15

*SEC v. Binance Holdings Ltd.,*
  No. 1:23-cv-01599 (*complaint filed* D.D.C. June 5, 2023) ................................7

*SEC v. Coinbase, Inc.,*
  No. 1:23-cv-04738 (*complaint filed* S.D.N.Y. June 6, 2023) .............................7

*SEC v. Payward, Inc.,*
  No. 3:23-cv-06003 (*complaint filed* N.D. Cal. Nov. 20, 2023) ...................... 7, 8

*SEC v. Sun,*
  No. 1:23-cv-02433 (*complaint filed* S.D.N.Y. Mar. 22, 2023) ..........................7

*SEC v. The Hydrogen Technology Co.,*
  No. 1:22-cv-08284 (*complaint filed* S.D.N.Y. Sept. 29, 2022) ..........................7

*SEC v. W.J. Howey Co.,*
  328 U.S. 293 (1946) ........................................................................................7-8

*SEC v. Wahi,*
  No. 2:22-cv-1009 (*complaint filed* W.D. Wash. July 21, 2022) ........................7

*Sierra Club v. Glickman,*
  156 F.3d 606 (5th Cir. 1998) ............................................................................20

*Sierra Club v. Peterson,*
    228 F.3d 559 (5th Cir. 2000) ................................................................................. 9

*St. Tammany Par. ex rel. Davis v. FEMA,*
    556 F.3d 307 (5th Cir. 2009) ................................................................................. 5

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ............................................................................................ 20

*Teva Pharms. USA, Inc. v. Sebelius,*
    595 F.3d 1303 (D.C. Cir. 2010) .......................................................................... 26

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ................................................................................. 9

*Texas v. United States,*
    523 U.S. 296 (1998) ............................................................................................ 22

*Texas v. United States,*
    40 F.4th 205 (5th Cir. 2022) ................................................................................ 10

*Texas v. United States,*
    787 F.3d 733 (5th Cir. 2015) ............................................................................... 19

*Texas v. United States,*
    497 F.3d 491 (5th Cir. 2007) .................................................................. 15, 16, 25

*TOTAL Gas & Power N. Am., Inc. v. FERC, as revised* (July 10, 2017),
    859 F.3d 325 (5th Cir. 2017) .......................................................................... 21, 25

*United States v. Hampton,*
    No. 23-cr-20172, 2024 WL 307641 (S.D. Fla. Jan. 26, 2024) ............................. 3

*United States v. Ream,*
    491 F.2d 1243 (5th Cir. 1974) ............................................................................. 15

*Veldhoen v. U.S. Coast Guard,*
    35 F.3d 222 (5th Cir. 1994) ................................................................................. 13

*Walmart Inc. v. U.S. DOJ,*
    21 F.4th 300 (5th Cir. 2021) ........................................... 11, 12, 13, 21, 23, 24, 25

*Webster v. Doe,*
    486 U.S. 592 (1988) ............................................................................................ 14

vi

**Statutes**

Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*

    5 U.S.C. § 551 ............................................................................................................1

    5 U.S.C. § 551(4) ......................................................................................................11

    5 U.S.C. § 551(6) ......................................................................................................11

    5 U.S.C. § 551(7) ......................................................................................................11

    5 U.S.C. § 551(8) ......................................................................................................11

    5 U.S.C. § 551(10) ....................................................................................................11

    5 U.S.C. § 551(11) ....................................................................................................11

    5 U.S.C. § 551(13) .............................................................................................11, 13

    5 U.S.C. § 552(a)(1) ...................................................................................................6

    5 U.S.C. § 701(a)(2) .................................................................................................14

    5 U.S.C. § 702 ..........................................................5, 6, 9, 10, 11, 12, 14, 15

    5 U.S.C. § 704 ............................................................................................................9

Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.*

    Section 20(a), 15 U.S.C. § 77t(a) ...........................................................................15

    Section 20(b), 15 U.S.C. § 77t(b)........................................................................2, 15

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

    Section 21(a), 15 U.S.C. § 78u(a) ...........................................................................15

    Section 21(d), 15 U.S.C. § 78u(d) ..................................................................2, 7, 15

28 U.S.C. § 1331 ..............................................................................................................6

28 U.S.C. § 1346(a)(2) .....................................................................................................6

Declaratory Judgment Act, 28 U.S.C. § 2201 .................................................................1

**Rules and Regulations**

17 C.F.R. § 200.10...........................................................................................................8, 9

17 C.F.R. § 200.735-4(d)(2)(ii)(A)...................................................................................8, 9

17 C.F.R. § 202.5...............................................................................................................2

Fed. R. Civ. P. 12(b)(1)..........................................................................................................1, 4, 5

**Other**

U.S. Const. art. III .........................................................................................................5, 15, 17, 25

Gary Gensler, Chair, SEC, *Kennedy and Crypto* (Sept. 8, 2022) ..................................................8

Gary Gensler, Chair, SEC, *Testimony of Chair Gary Gensler before the United States House of Representatives Committee on Financial Services* (Apr. 18, 2023).........................................................8, 9

Defendant Securities and Exchange Commission moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## INTRODUCTION

Plaintiffs Beba, an apparel company that distributed a digital asset and plans to do so again, and DeFi Education Fund (DEF), an advocacy organization, request relief against the Commission that is premature and is premised on a phantom—a supposed policy that the Commission never adopted and does not actually exist.  Plaintiffs' complaint repeatedly refers to the Commission's adoption of a digital-asset policy, but the complaint does not identify a rule, order, or other Commission action that reflects the promulgation of the supposed policy.  Beba also seeks to block the Commission from bringing an enforcement action against it, but the complaint fails to allege facts demonstrating that any such enforcement action is imminent or threatened, or even that the Commission has taken any investigative or other enforcement steps with respect to Beba.  In effect, plaintiffs ask this Court to adjudicate the legality of a policy that does not exist and to block potential future enforcement action that may never occur.

This Court lacks jurisdiction to do so, and the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1).  First, sovereign immunity bars this action because plaintiffs have not identified any final agency action that would waive sovereign immunity for their claim under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, or Beba's request for relief under the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201.  Second, ripeness and standing requirements preclude this Court from exercising jurisdiction consistent with the U.S. Constitution.

## BACKGROUND

Congress "established the Securities and Exchange Commission * * * to enforce federal securities laws."  *Kokesh v. SEC*, 581 U.S. 455, 458 (2017).  When the Commission learns of a potential securities-law violation, the "agency's decision on whether to investigate is a matter

committed to agency discretion by law." *Gentile v. SEC*, 974 F.3d 311, 319 (3d Cir. 2020); *see Gabelli v. SEC*, 568 U.S. 442, 451 (2013) ("[A] central mission of the Commission is to investigate potential violations of the federal securities laws.") (cleaned up).  Following an investigation, the Commission may initiate an enforcement action by filing a complaint that asks a federal court to grant relief and impose remedies.  *See, e.g.*, 15 U.S.C. §§ 77t(b), 78u(d) (authorizing enforcement actions).  As with investigations, Congress entrusted the decision whether to file an enforcement action to the Commission's "absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 297 (2d Cir. 2014) ("The exclusive right to choose which charges to levy against a defendant rests with the S.E.C."); *see* 15 U.S.C. §§ 77t(b), 78u(d); 17 C.F.R. § 202.5(b).  The Commission's decision about whether to bring an enforcement action "involves a complicated balancing of * * * factors peculiarly within the agency's expertise, including the allocation of scarce resources."  *Gentile*, 974 F.3d at 319; *see also Block v. SEC*, 50 F.3d 1078, 1084 (D.C. Cir. 1995) ("[T]he agency alone, and neither a private party nor a court, is charged with the allocation of enforcement resources.")

Plaintiffs do not allege that the Commission has taken any investigative or enforcement steps with regard to them.  One of the plaintiffs is Beba, which alleges that it is a "small apparel company" that sells "handmade luggage and accessories * * * through its online store."  Compl. ¶ 1.[1]  Beba claims that, in addition to selling handcrafted goods, it created a "BEBA token," which it describes as a "digital asset" that can be "redeem[ed] * * * for an exclusive duffel bag that Beba has made available only to token holders at a discounted price."  *Id.* ¶¶ 3, 5.  According to the complaint, these tokens can also be "freely traded," and Beba "anticipates that the BEBA tokens will increase in value" and "expects a robust secondary market will emerge for BEBA tokens."  *Id.* ¶¶ 71-73.  Beba

---

[1] For purposes of this motion, this Court accepts the complaint's factual allegations as true but not its legal conclusions.  *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020).

alleges that it has not registered the offering of BEBA tokens pursuant to the federal securities laws. *Id.* ¶ 123.  Beba further alleges that it distributed BEBA tokens via an "airdrop"—a process by which Beba "sen[t] the tokens to the recipients' pre-existing wallet addresses on a common digital asset network."  *Id.* ¶¶ 64, 77; *see United States v. Hampton*, No. 23-cr-20172, 2024 WL 307641, at *2 n.6 (S.D. Fla. Jan. 26, 2024) (describing an "airdrop" as the online "distribution of a token for free to promote widespread interest in the token").  Beba claims that it is planning to distribute additional BEBA tokens via a second airdrop but asserts that at present it "cannot do so" because it "fears that the SEC will bring an enforcement action related to its airdrop distributions of BEBA tokens."  Compl. ¶¶ 81, 85, 122.

The other plaintiff is DEF.  DEF alleges that it is a "research and advocacy group based in Washington, D.C." that "advocates for decentralized finance users, participants, and software developers working to create new decentralized finance products using blockchain technology."  *Id.* ¶¶ 23, 175-76.  Plaintiffs do not allege that there is any relationship between Beba and DEF or between DEF and this judicial district.

Plaintiffs' complaint contains two counts for which they seek relief.  First, both plaintiffs assert that the Commission violated the APA by adopting a "new unwritten policy that nearly all digital assets are securities and the majority of transactions involving digital assets are securities transactions."  *Id.* ¶¶ 193-201 & 60.  The complaint identifies no rule, order, or other document stating this alleged policy or reflecting its adoption, such as a citation to the Federal Register.  Nor does the complaint identify the date of the alleged policy's adoption; plaintiffs allege only that the policy was adopted at some time after April 17, 2021, and that the policy is manifested "through ad hoc enforcement actions" rather than a "formal rulemaking process."  *Id.* ¶¶ 20, 134, 195.  Beba claims that the alleged policy "diminishes the value of BEBA tokens and subjects Beba to potential enforcement actions for its airdrops or later exchange of its assets [and] lessens the reach of BEBA

3

tokens by chilling secondary market activity." *Id.* ¶ 174.  For its part, DEF claims that the alleged

policy "injures DEF by causing it to expend resources responding to the uncertainties and problems

that the SEC has engendered" and by "damag[ing] the value" of digital assets held by DEF.  *Id.* ¶

178.  Plaintiffs ask this Court to vacate the alleged policy or to prevent the Commission from

enforcing it.  *Id.* 60.

Second, Beba invokes the DJA and asks this Court to declare "that Beba's first airdrop

distribution of BEBA tokens is not an unlawful sale of securities," "that Beba's planned second

airdrop distribution of BEBA tokens is not an unlawful sale of securities," and "that BEBA tokens

are not themselves investment contracts." *Id.* ¶¶ 179-92 & 60.  The complaint does not allege that

the Commission has threatened to bring an enforcement action against Beba.  Indeed, the complaint

does not allege any Commission conduct related to Beba—no correspondence, no calls with staff,

no investigation—or even that the Commission was aware of Beba or its tokens prior to the filing of

this lawsuit.  But Beba alleges that it is nonetheless entitled to declaratory relief in light of its "fears

that the SEC will bring an enforcement action related to its airdrop distributions of BEBA tokens"

because the Commission supposedly "views most, if not all[,] initial distributions of digital assets as

securities offerings" and "routinely brings enforcement actions based on its * * * view of the law."

*Id.* ¶¶ 122, 124.

## STANDARD OF REVIEW

The Commission moves to dismiss for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P.

12(b)(1).[2]  "Federal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies

outside this limited jurisdiction," and "the burden of establishing the contrary rests upon the party

asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned

---

[2] By filing this motion, the Commission does not waive and reserves all defenses.  *See Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017).

up); *Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, 364 (5th Cir. 2022) ("The burden of establishing federal jurisdiction rests on the party seeking the federal forum.") (cleaned up).  "[A]t the Rule 12(b)(1) stage of the proceedings, the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

## ARGUMENT

Two independent jurisdictional defects doom this lawsuit: there has been no waiver of sovereign immunity, and the complaint fails to present a case or controversy under Article III of the Constitution.  As a result, this Court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

**I.      This Court lacks jurisdiction because sovereign immunity bars plaintiffs' suit.**

Plaintiffs fail to carry their burden of showing "Congress's unequivocal waiver of sovereign immunity."  *St. Tammany Par. Ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).  "[T]he United States may not be sued except to the extent that it has consented to suit by statute," and where there is no consent or waiver, "the court lacks jurisdiction." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (cleaned up); *accord FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

For both the APA claim, which challenges the Commission's supposed adoption of an "unwritten policy" (Compl. ¶ 107), and Beba's request for declaratory relief, which asks this Court to bless Beba's business operations under the federal securities laws, the complaint fails to identify the requisite waiver of sovereign immunity.  The complaint does not invoke Section 702 of the APA, which can waive sovereign immunity for actions seeking nonmonetary relief brought by "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702.  But even if plaintiffs had cited Section 702 and this Court were to engage in the

5

sovereign-immunity analysis mandated by Fifth Circuit precedent, there is no waiver of sovereign immunity for either the APA claim or Beba's request for declaratory relief.[3]

### A.    Section 702 does not waive sovereign immunity for the APA claim.

Plaintiffs erroneously premise their APA claim on the Commission's supposed adoption of a "new unwritten policy that nearly all digital assets are securities and the majority of transactions involving digital assets are securities transactions." Compl. 60. But the complaint fails to allege facts establishing either the existence of any such policy or that it is a final agency action, which forecloses any argument that the Commission waived sovereign immunity as to plaintiffs' APA claim. *Alabama-Coushatta*, 757 F.3d at 489.

1. In claiming that the Commission adopted the alleged policy, the complaint does not identify a rule adopted by the Commission that appeared in the Federal Register or any other place. *See* 5 U.S.C. § 552(a)(1). Nor does the complaint point to a Commission order, document, or statement of the Commission reflecting the adoption of such a policy. Instead, the complaint claims that the alleged policy is "unwritten," was adopted "through ad hoc enforcement actions" rather than a "formal rulemaking process," and was announced in speeches by a Commissioner and media reports of those speeches. Compl. ¶¶ 20, 134, 195. But a litigant cannot demonstrate a waiver of sovereign immunity and bring a lawsuit against the federal government based on an unwritten and non-existent policy.

---

[3] The complaint's jurisdictional allegations do not solve plaintiffs' sovereign-immunity problem. Plaintiffs allege subject matter jurisdiction under 28 U.S.C. § 1331 and the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Compl. ¶ 25. But "it is well settled * * * that sovereign immunity is not waived by a general jurisdictional statute such as 28 U.S.C. § 1331." *Koehler v. United States*, 153 F.3d 263, 266 n.2 (5th Cir. 1998). And the Little Tucker Act provides neither subject-matter jurisdiction nor a waiver of sovereign immunity because there is no claim here "to recover damages founded on the Constitution, a statute, a regulation, or an express or implied-in-fact contract." *Preseault v. I.C.C.*, 494 U.S. 1, 11–12 (1990).

Plaintiffs struggle—and fail—to identify the policy they try to challenge.  They refer to several enforcement actions related to digital assets that the Commission has filed in other courts (*see, e.g., id.* ¶¶ 11, 112, 116, 121), but identifying complaints that the Commission has filed to further its statutory mission of enforcing the federal securities laws does not reveal the adoption or existence of a "policy" that plaintiffs can challenge consistent with principles of sovereign immunity. Under Section 21 of the Securities Exchange Act of 1934, the Commission brings enforcement actions at its discretion based on information developed in investigations.  *See* 15 U.S.C. § 78u(d). Complaints filed in digital-asset-related enforcement actions allege violations of existing law based on facts specific to the digital assets and transactions at issue, which can be (and have been) contested by the defendants in those cases and will be (and have been) adjudicated by judges and juries.  *See* Compl. ¶¶ 228-445, *SEC v. Payward, Inc.*, No. 3:23-cv-06003 (N.D. Cal. filed Nov. 20, 2023); Compl. ¶¶ 114-305, *SEC v. Coinbase, Inc.*, No. 1:23-cv-04738 (S.D.N.Y. filed June 6, 2023); Compl. ¶¶ 282-351, *SEC v. Binance Holdings Ltd.*, No. 1:23-cv-01599 (D.D.C. filed June 5, 2023); Compl. ¶¶ 47-156, *SEC v. Sun*, No. 1:23-cv-02433 (S.D.N.Y. filed Mar. 22, 2023); Compl. ¶¶ 131-40, *SEC v. The Hydrogen Technology Co.*, No. 1:22-cv-08284 (S.D.N.Y. filed Sept. 29, 2022); Compl. ¶¶ 89-206, *SEC v. Wahi*, No. 2:22-cv-1009 (W.D. Wash. filed July 21, 2022).  Those complaints do not individually or collectively establish a Commission "policy" that may be challenged in a separate declaratory judgment action.

Plaintiffs acknowledge that the complaints they cite include "analysis concluding that [the] transactions [at issue] were securities transactions—or that the digital assets [at issue] were securities," "employ[ing] * * * facts-and-circumstances test[s]."  Compl. ¶¶ 20, 106, 111, 134; *see also, e.g., id.* ¶¶ 75, 119, 143 (acknowledging relevant facts alleged in the *Coinbase* complaint).  And though plaintiffs claim that such an analysis was "nominal" (*id.* ¶¶ 20, 106, 111, 134), the complaints themselves belie that assertion.  For example, the *Payward* complaint identifies *SEC v. W.J. Howey*

*Co.*, 328 U.S. 293 (1946), as "set[ting] forth the relevant test for determining whether an instrument

is an investment contract subject to regulation under U.S. securities laws."  Compl. ¶ 4, *SEC v.*

*Payward, Inc.*, No. 3:23-cv-06003 (N.D. Cal. filed Nov. 20, 2023); *see id.* ¶ 16.  And that complaint

includes 33 paragraphs of factual allegations relevant to that facts-and-circumstances test regarding

the "FIL" digital asset (and similar factual allegations specific to the other digital assets there at

issue).  *Id.* ¶¶ 228-445.

　　　　Plaintiffs fare no better when they try to demonstrate the existence of the alleged

Commission policy by pointing to a statement by a single Commissioner.  *See, e.g.*, Compl. ¶¶ 8, 103,

121, 125, 135.[4]  The Commission acts through a majority vote of a quorum of its five

Commissioners.  *See* 17 § C.F.R. § 200.10.  The statement of a single Commissioner cannot represent

the adoption or existence of a Commission policy, and a Commissioner's speech is not agency

action.  *See* 17 C.F.R. 200.735-4(d)(2)(ii)(A).

　　　　A closer examination of the cited statements underscores this conclusion.  In each, the

speaker disclaims speaking for the Commission.  *See, e.g.*, Gary Gensler, Chair, SEC, *Kennedy and*

*Crypto* (Sept. 8, 2022), https://www.sec.gov/news/speech/gensler-sec-speaks-090822 (cited at

Compl. ¶¶ 8, 103, 121, 125, 135) ("As is customary, I'd like to note my views are my own, and I'm

not speaking on behalf of the Commission or SEC staff."); Gary Gensler, Chair, SEC, *Testimony of*

*Chair Gary Gensler before the United States House of Representatives Committee on Financial Services* (Apr. 18,

2023), https://www.sec.gov/news/testimony/gensler-testimony-house-financial-services-041823

(Gensler Testimony) (cited at Compl. ¶¶ 125, 135) (similar).  And the substance of the cited remarks

contradicts the claim that the Commission adopted a policy that forgoes a "transaction-specific

facts-and-circumstances test to determine whether a digital asset or digital asset transaction was a

---

[4] The complaint alleges that the Commission has issued "policy statements" regarding the alleged
policy (Compl. ¶¶ 8, 15) but fails to identify any such statements by the Commission itself.

security."  Compl. ¶ 134; *see, e.g.*, Gensler Testimony ("The point is, it is important to look at the facts and circumstances of a product, not its label, to determine whether it is a crypto security token, a crypto non-security token, or another instrument.").

Plaintiffs' efforts to establish the existence of a Commission policy through Commissioner *dissents* (*see, e.g.*, Compl. ¶¶ 121, 141, 145) and *media accounts* of the statements of a single Commissioner (*see, e.g., id.* ¶¶ 8, 136) are similarly unavailing.  Just as statements by the Chair do not establish a Commission policy, statements by any of the other four Commissioners do not establish a Commission policy.  *See* 17 §§ C.F.R. 200.10, 200.735-4(d)(2)(ii)(A).  And media reports of speeches or other statements by Commissioners of course do not constitute agency action or support plaintiffs' claim that the Commission adopted the alleged policy.

**2.**  Moreover, because plaintiffs' APA claim seeks judicial review "pursuant only to the general provisions of the APA * * * [t]here must be 'final agency action'" in order for this Court to exercise jurisdiction.  *Alabama-Coushatta*, 757 F.3d at 489, citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *see* 5 U.S.C. § 704; *see also Texas v. EEOC*, 933 F.3d 433, 440 n.8 (5th Cir. 2019) ("In this circuit, whether an agency action is final is a jurisdictional issue.").  Even under the allegations in the complaint, the alleged policy could not be final agency action, and Section 702's sovereign immunity waiver would not apply, because plaintiffs do not identify any Commission actions that both "(1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc), quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  Plaintiffs assert that the alleged policy "*presumes most* digital assets are securities and *most* transactions involving digital assets are securities transactions."  Compl. ¶ 19 (emphasis supplied); *see also id.* ¶¶ 9, 21, 103, 115.  Such a presumption would not be the consummation of the Commission's decisonmaking process because it would not be dispositive as to any digital asset;

9

rather, it would be "merely tentative or interlocutory [in] nature," *Bennett*, 520 U.S. at 178, and would "not commit the [Commission] to any particular course of action," *Luminant Generation Co. v. EPA*, 757 F.3d 439, 442 (5th Cir. 2014).

Similarly, the alleged policy would not create new rights, obligations, or legal consequences. That is because the alleged policy neither "appears on its face to be binding [n]or is applied by the agency in a way that indicates it is binding" such that it creates any legal consequences. *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022). The "case law is clear that [courts] lack authority to review claims under the APA where an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the [challenging] party." *Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798, 808 (D.C. Cir. 2006) (cleaned up); *see also Nat'l Pork Producers Council v. EPA,* 635 F.3d 738, 756 (5th Cir. 2011) ("Agency actions that have no effect on a party's rights or obligations are not reviewable final actions."). Even if there were an actual policy that created a presumption regarding digital assets—to reiterate, no such policy actually exists—and that presumption resulted in the Commission bringing enforcement actions related to particular digital assets, the filing of an enforcement action is the first step in a judicial process; any legal consequences would flow from a court decision and judgment applying the federal securities laws in a specific factual context. *See, e.g.*, *Luminant*, 757 F.3d at 442. Consequently, plaintiffs cannot claim that they suffered "any legal wrong," 5 U.S.C. § 702, as a result of a hypothetical policy that, by plaintiffs' own allegations, would at most result in plaintiffs hypothetically being defendants in hypothetical enforcement actions where they could present defenses, including that the federal securities laws do not apply.

**B.    Section 702 does not waive sovereign immunity for Beba's DJA request.**

With respect to its claim for relief under the DJA, Beba fails to establish the "two separate requirements for establishing a waiver of sovereign immunity" under Section 702, because the complaint neither "identif[ies] some agency action affecting [it] in a specific way" nor shows that

Beba "suffered legal wrong because of the challenged agency action." *Alabama-Coushatta*, 757 F.3d at 489 (cleaned up).

Because the complaint "fails to point to any identifiable 'agency action' within the meaning of § 702" in connection with the request for relief under the DJA, Beba has not alleged "that subject-matter jurisdiction exists for this lawsuit." *Id.* at 490. "'[A]gency action' for the purposes of Section 702 is set forth by 5 U.S.C. § 551(13) and is defined as 'the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Id.* at 489, quoting 5 U.S.C. § 551(13); *see also Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020) (stating that "agency action" is "a term of art that does not include all conduct") (cleaned up). Beba has not shown that any of those terms applies here.

The complaint fails to allege that the Commission has adopted a "rule," but rather pins its allegations to the supposed "unwritten policy." But an unwritten policy does not fit within the APA's definition of "rule"; it is not "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). Indeed, it makes little sense to conceive of an "unwritten policy" as fitting into this definition of a "rule"; if nothing is written, there is no "statement," let alone one that implements or prescribes law or policy. *Id.* Beba does not identify anything else included in Section 551(13) that has affected it, such as a "license" or "relief." *See id.* § 551(8), (10), (11) (defining those terms for APA purposes); *Walmart Inc. v. DOJ*, 21 F.4th 300, 308-311 (5th Cir. 2021) (discussing meaning of "rule"). Nor does Beba allege that the Commission has engaged in an "adjudication"—the "agency process for the formulation of an order," 5 U.S.C. § 551(7)—regarding Beba, or entered an "order" making a final disposition related to Beba. *See id.* § 551(6) ("'[O]rder' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing.").

Instead, Beba points to a supposed "threat of [Commission] enforcement against Beba for its distribution of BEBA tokens." Compl. ¶ 124. But the complaint does not plausibly allege any threat by the Commission regarding Beba's actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility "asks for more than a sheer possibility"). And even if such allegations appeared, the Fifth Circuit has held that this type of explicit threat of future enforcement, which has not even been alleged here, does not qualify as agency action for purposes of Section 702. *Walmart*, 21 F.4th at 310-11. The agency-action requirement cannot be satisfied with mere conjecture regarding what the Commission might someday do when acting in its enforcement capacity.

Beba premises its request for relief under the DJA on the notion that the Commission "routinely brings enforcement actions" based on its "view" that "most, if not all[,] initial distributions of digital assets [are] securities offerings." Compl. ¶¶ 124-25. But the Commission's allegations of wrongdoing in a complaint against another party are not rules, orders, or policies affecting Beba because a "complaint does not create rights or obligations, nor does it have future effect." *Walmart*, 21 F.4th at 308-09 (cleaned up). Rather, a civil action brought by a federal agency is a request that a district court exercise its jurisdiction to adjudicate liability for an alleged violation of the law and grant the requested relief; it is not a self-executing action by the agency. *See, e.g.*, *City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1195-96 (N.D. Cal. 2013) ("[T]he filing of the * * * complaint simply initiates a judicial process expressly authorized by statute and requires the Government to carry its burden of establishing that the defendant … [violated the law]."), *aff'd sub nom. City of Oakland v. Lynch*, 798 F.3d 1159 (9th Cir. 2015). And even if the Commission's allegations against *other entities* somehow constituted agency action, they would not be agency action against *Beba* and thus would not "affect[] [Beba] in a specific way," as is required to invoke Section 702's sovereign-immunity waiver. *Alabama-Coushatta*, 757 F.3d at 489; *Lujan*, 497 U.S. at 882

(observing that for purposes of Section 702, the agency action must "affect[] [the plaintiff] in the specified fashion").

Moreover, just as with the APA claim, Beba fails to identify the type of *final* agency action that is necessary for this Court to exercise jurisdiction over Beba's request for relief under the DJA. *See supra* 9-10. The filing of a complaint in federal court against a third party does not constitute a final agency action. Indeed, even for adjudications before Article I tribunals, the issuance of an administrative complaint is "not 'final agency action'" because it represents only "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-41 (1980).[5] And even if Beba had alleged that the Commission were investigating it, which the complaint does not, the Fifth Circuit has held that "[a]n agency's initiation of an investigation does not constitute final agency action." *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).

Finally, even if the complaint identified a final agency action that was tied to its request for declaratory relief, Beba fails to demonstrate that it "suffered legal wrong" on account of that agency action, which is a prerequisite for a waiver of sovereign immunity. *Walmart*, 21 F.4th at 308; *Alabama-Coushatta*, 757 F.3d at 489. Beba fails to allege any supposed legal violation by the Commission. Rather, Beba disagrees with interpretations of the federal securities laws advanced by the Commission in those enforcement actions—allegations that the courts hearing those actions will resolve with regard to those particular defendants. *See, e.g.*, Compl. ¶¶ 103-21. But those other suits

---

[5] Neither the statutory definition of "agency action" in 5 U.S.C. § 551(13) nor caselaw supports the notion that the filing of an agency enforcement action against a defendant in federal court would allow that defendant to sue the agency in a separate declaratory judgment action that seeks to enjoin the enforcement action. *See supra* 11; *Walmart*, 21 F.4th at 311 (concluding that "the pendency of an enforcement action against [the plaintiff in a different court] on theories of liability similar to those [the plaintiff] challenges here * * * demonstrates that this [declaratory judgment] action is not fit for judicial decision"). But in any event, this Court need not reach that issue because Beba invokes Section 702 based on only a supposed "threat of enforcement." Compl. ¶ 124.

do not cause "legal wrong" to Beba.  At most, *a court* may impose relief that creates consequences and obligations *for another party,* but such judgments, entered by a different court, will not result in Beba suffering legal wrong within the meaning of Section 702.

### C.   Plaintiffs challenge matters committed to the Commission's discretion.

Even if the complaint's allegations somehow implicated final agency action affecting plaintiffs within the meaning of the APA, the APA's exception for actions "committed to agency discretion" would bar plaintiffs' reliance on Section 702's sovereign-immunity waiver.  5 U.S.C. § 701(a)(2) ("This chapter applies, according to the provisions thereof, except to the extent that * * * agency action is committed to agency discretion by law.").  The waiver in Section 702 "is not absolute, and Congress has provided that [it] does not apply [if the challenged] 'agency action is committed to agency discretion by law.'"  *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 232-33 (5th Cir. 2015), quoting 5 U.S.C. § 701(a)(2); *see Webster v. Doe*, 486 U.S. 592, 597 (1988) ("[J]udicial review under § 702 * * * is predicated on satisfying the requirements of § 701.").  "An action is committed to agency discretion when 'no judicially manageable standards are available for judging how and when an agency should exercise its discretion.'"  *Christopher Village, Ltd. Partnership v. Retsinas*, 190 F.3d 310, 315 (5th Cir. 1999), quoting *Heckler*, 470 U.S. at 830.

In requesting relief under the DJA, Beba seeks to prevent the Commission from bringing an enforcement action against it at some point in the future.  *See, e.g.*, Compl. ¶¶ 17, 121, 122 & 60. And in their APA claim, plaintiffs challenge the Commission's pursuit of digital asset-related enforcement actions as part of an alleged unwritten policy.  *See, e.g., id.* ¶ 107 ("The SEC began enforcing its unwritten policy by bringing far-reaching enforcement actions after Chair Gensler was appointed in 2021.").  But the "exercise of prosecutorial discretion" to investigate and to bring enforcement actions, which implicates the Commission's priorities and allocation of its finite resources and for which there are not judicially-manageable standards, is the paradigmatic example

of agency action committed to agency discretion by law.  *Heckler*, 470 U.S. at 828-34 (cleaned up); *Gentile*, 974 F.3d at 319 (holding that the Commission's "decision on whether to investigate is a matter committed to agency discretion by law."); *Citigroup*, 752 F.3d at 297 ("The exclusive right to choose which charges to levy against a defendant rests with the S.E.C."); *see, e.g.*, 15 U.S.C. §§ 77t(a), (b), 78u(a), (d).  "This discretion flows not from a desire to give carte blanche to law enforcement officials but from recognition of the constitutional principle of separation of powers."  *United States v. Ream*, 491 F.2d 1243, 1246 n.2 (5th Cir. 1974).  Because the decision whether to investigate and the decision whether to bring enforcement actions are committed to the Commission's discretion by law, Section 701 disables Section 702's waiver of sovereign immunity, and this Court lacks jurisdiction.

## II.     Plaintiffs' complaint does not present a justiciable case or controversy.

Under Article III's "Cases" and "Controversies" limitation, this Court lacks subject-matter jurisdiction over both the APA claim and Beba's request for declaratory relief.  U.S. Const. art. III, § 2.  In interpreting Article III, "courts have developed justiciability doctrines, such as the standing and ripeness doctrines."  *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam).  Though "the doctrines often overlap in practice," "standing is concerned with whether a proper party is bringing suit, while ripeness is concerned with whether the suit is being brought at the proper time."  *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007).  "[S]tanding and ripeness are essential components of federal subject-matter jurisdiction."  *Sample*, 406 F.3d at 312.  Plaintiffs here have not adequately pleaded subject-matter jurisdiction, because they have not alleged facts demonstrating standing and ripeness.  *See, e.g.*, *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133-34 (5th Cir. 2009); *see also Murthy v. Missouri*, No. 23-411, 2024 WL 3165801, at *9 (U.S. June 26, 2024) (standing is assessed plaintiff by plaintiff and claim by claim); *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 n.27 (5th Cir. 2021) (ripeness is assessed claim by claim).

### A.       Plaintiffs have not alleged a justiciable APA claim.

#### 1.       The APA claim is not ripe.

Plaintiffs fail to demonstrate that their APA claim is ripe.  "Determining whether administrative action is ripe for judicial review requires [a court] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  "Even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness."  *Lopez v. City of Houston,* 617 F.3d 336, 342 (5th Cir. 2010) (cleaned up).  Plaintiffs cannot do so, because the supposed "unwritten policy" underlying their APA claim imposes no legal obligations on them.

Plaintiffs present none of the indicia of "hardship" that would justify review now.  "The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being forced to modify one's behavior in order to avoid future adverse consequences." *Texas,* 497 F.3d at 499 (cleaned up).  But for the reasons discussed above (*see supra* 9-10), the non-existent policy alleged by plaintiffs "do[es] not command anyone to do anything or to refrain from doing anything," *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998), and it imposes no harms on plaintiffs.  *See, e.g.*, *Nat'l Park Hosp. Ass'n,* 538 U.S. at 809 (concluding that "a general statement of policy * * * does not create adverse effects of a strictly legal kind, which [the Court has] previously required for a showing of hardship") (cleaned up); *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 393 (D.C. Cir. 2013) ("[C]ontroversies over * * * policy statements typically cannot result in justiciable disputes."); *see also Choice Inc. of Texas v. Greenstein,* 691 F.3d 710, 716 (5th Cir. 2012) (concluding that withholding judicial review of a law would not cause hardship because the law "impose[d] no new, affirmative obligation").  There is no cognizable hardship to plaintiffs because if

the Commission were ever to bring an enforcement action against Beba—which may never happen for multiple reasons—Beba would be able to assert a full panoply of defenses.

### 2. Plaintiffs lack standing.

Article III standing presents another insurmountable hurdle to plaintiffs' APA claim.  "To establish standing, * * * a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."  *FDA v. All. for Hippocratic Med.*, No. 23-235, 2024 WL 2964140, at *6 (U.S. June 13, 2024).  Both DEF and Beba lack standing to bring the APA claim.

### i. DEF lacks standing.

1.  DEF argues that it has standing to assert the APA claim because "DEF has dedicated labor and financial resources toward educating the public on the SEC's new policy and counteracting its negative effects" and DEF "would otherwise expend these resources on promoting new projects and growth in the digital asset industry."  Compl. ¶ 177.  But the Supreme Court recently rejected this diversion-of-resources theory of standing in *Alliance for Hippocratic Medicine*, where organizational plaintiffs claimed standing "based on their incurring costs to oppose FDA's actions."  2024 WL 2964140, at *13.  Those plaintiffs alleged that FDA actions had "caused" them "to conduct their own studies * * * so that [they] can better inform their members and the public" and had "forced" them "to expend considerable time, energy, and resources drafting citizens petitions to FDA, as well as engaging in public advocacy and public education."  *Id.* (cleaned up).  To do so, they had "to spend considerable resources to the detriment of other spending priorities."  *Id.* (cleaned up).

The Court unanimously rejected this theory.  It held that an organization could not premise standing on an argument that its "ability to provide services and achieve [its] organization mission[]"

is "impaired" by an agency's conduct.  *Id.* at *13.  The Court reasoned that an organization "cannot manufacture its own standing" and thus "cannot spend its way into standing."  *Id.*  Were the law otherwise, "all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies."  *Id.*  DEF's claim of standing based on supposed changes to its allocation of resources in response to the alleged Commission policy thus fails under *Alliance for Hippocratic Medicine*.[6]

2.  DEF also claims that "[t]he SEC's [alleged] policy injures DEF by causing classic economic harm" because it supposedly "damag[es] the value" of digital assets held by DEF.  Compl. ¶ 178.  But the complaint fails to allege facts demonstrating causation or redressability, two key standing requirements that the Supreme Court reemphasized in *Alliance for Hippocratic Medicine*.

DEF asserts that the alleged policy has caused the market price for unspecified digital assets to decrease.  *See* Compl. ¶ 178.  But DEF fails to allege facts plausibly linking the alleged policy to the value of digital assets held by DEF (which the complaint fails to identify).  Instead, DEF relies entirely on "[s]peculative and unsupported assumptions regarding the future actions of third-party market participants," but those "are insufficient to establish Article III standing."  *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 943 (D.C. Cir. 2004); *see Common Cause v. Dep't of Energy,*

---

[6] Nor would it have worked under Fifth Circuit precedent that preceded *Alliance for Hippocratic Medicine*.  Because DEF's routine activities include "educat[ing] the public about decentralized finance" (Compl. ¶ 176), DEF's alleged new work "educating the public on the SEC's new policy" (*id.* ¶ 177) "does not differ from [DEF's] routine activities" and thus would not be a cognizable injury.  *Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 352 (5th Cir. 2023).  And DEF's allegation that it "dedicated * * * resources to counteracting * * * negative effects" of "the SEC's new policy" (Compl. ¶ 177) is "a threadbare allegation [that] is insufficient for injury, even at the motion to dismiss stage," *Louisiana Fair Hous. Action Ctr.*, 82 F.4th at 353.  Moreover, the complaint does not allege facts demonstrating that such "counteracting" was not within DEF's routine activities and "diverting resources from one core mission activity to another * * * does not suffice" to demonstrate cognizable injury.  *Id.* at 355 (cleaned up); *see also id.* at 356 ("It's a basic tenet of our Article III jurisprudence that plaintiffs cannot assert standing based on self-inflicted injury.  So a plaintiff can't establish standing simply by choosing to expend resources in response to conduct it disagrees with, and calling that injury.") (Ho, concurring) (cleaned up).

702 F.2d 245, 251 (D.C. Cir. 1983) ("[W]here injury is alleged to occur within a market context, the concepts of causation and redressability become particularly nebulous and subject to contradictory, and frequently unprovable, analyses."); *see also Texas v. United States*, 787 F.3d 733, 752 (5th Cir. 2015) ("[W]here the Supreme Court has found that an injury is not fairly traceable, the intervening, independent act of a third party has been a necessary condition of the harm's occurrence, or the challenged action has played a minor role.").  "[T]he causation requirement precludes speculative links," but that is all DEF offers for this standing theory because "it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs." *All. for Hippocratic Med.*, 2024 WL 2964140, at *7.  Moreover, the causation prong "also rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Id.*

DEF fails to allege facts showing either that the alleged Commission policy has had any impact on the value of the unidentified digital assets allegedly held by DEF—or that vacatur of the alleged policy would redress any injury and mitigate the supposed pricing impact.  This deficiency is unsurprising since there is no actual policy and, even as alleged, the purported unwritten policy is not a determination that any particular digital asset is a security but rather merely a presumption without legal consequence.  *See supra* 9-10.

### ii.      Beba lacks standing

Beba alleges that it has standing to assert an APA claim because "the SEC's new policy * * * diminishes the value of BEBA tokens and subjects Beba to potential enforcement actions for its airdrops or later exchange of its assets," and also "lessens the reach of BEBA tokens by chilling secondary market activity and foreclosing avenues by which BEBA tokens would otherwise be available."  Compl. ¶ 174.  But Beba, like DEF, relies on speculation regarding the market impact of the alleged policy rather than factual allegations, and thus fails to establish standing.  *See supra* 18-19.

Beba fails to allege any impact of the alleged Commission policy on BEBA's value or market activity—there are no allegations regarding price or trading volume related in time or substance to some action by the Commission—or that vacatur of the alleged policy would redress that impact. And Beba's allegation that "the SEC's new policy * * * subjects Beba to potential enforcement actions for its airdrops or later exchange of its assets" also fails to allege an injury in fact because (1) the complaint does not allege facts demonstrating that any such policy was adopted (*see supra* 6-9), (2) even under plaintiffs' conception, the alleged policy is at most a presumption, not a determination regarding the status of any digital asset (*see supra* 9-10), and (3) the complaint fails to allege that the threat of any such enforcement actions is more than speculative (*see infra* 21-22). Moreover, Beba fails to allege that any injury in fact would be fairly traceable to the alleged policy or redressable by a favorable ruling when the alleged policy has no legal effect.  *See supra* 9-10.[7]

**B.      Beba has not alleged a justiciable request for relief under the DJA.**

**1.      The request for DJA relief is not ripe.**

**i.      The issues presented are not ripe for judicial decision.**

Beba's request for declaratory relief fails because it asks this Court to halt future Commission enforcement actions that are hypothetical.  "A declaratory judgment action, like any

---

[7] The result is not different because the APA claim rests on an alleged procedural violation related to the absence of a notice and comment process for a rulemaking that never actually occurred.  While "in a procedural rights case a plaintiff is not held to the normal standards for redress[a]bility and immediacy, [that] does not mean * * * that a procedural rights plaintiff has standing merely because of the government's failure to comply with the relevant procedural requirements."  *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 698–99 (5th Cir. 2000) (cleaned up).  "[T]he plaintiff must show an injury that is both concrete and particular, as opposed to an undifferentiated interest in the proper application of the law."  *Id.* at 699; *see Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation * * * is insufficient to create Article III standing."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.8 (1992).  And a procedural-rights plaintiff also "must establish that the injury is fairly traceable to the proposed government action or inaction" and also "show that there is a possibility that the procedural remedy will redress his injury."  *Sierra Club v. Glickman*, 156 F.3d 606, 613 (5th Cir. 1998).  Here plaintiffs fail to make the required showing.

other action, must be ripe in order to be justiciable," *TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 332 (5th Cir. 2017), *as revised* (July 10, 2017) (cleaned up), and it "is ripe * * * only where an actual controversy exists," meaning that "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests," *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (cleaned up).  *See Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006) (per curiam) (interpreting the DJA's "'case of actual controversy' requirement to be coterminous with Article III's 'case or controversy' requirement").  At this "pre-enforcement * * * action" stage, the issues are not fit for review when considering "whether the agency's action is sufficiently final" and "the likelihood that threatened litigation will occur," as well as "whether [judicial review] of [the] issue[s] would benefit from a more concrete setting" and "whether the issue[s] presented [are] purely legal one[s]."  *Walmart*, 21 F.4th at 311 (cleaned up).  While "[f]ailure on even one of [these] prongs can render a case unfit for judicial review," *id.*, here all of the considerations demonstrate a lack of fitness for review.

1.  Beba's request for judicial intervention is premature because the Commission has taken no action regarding Beba, and Beba offers only speculation as to the filing of a potential future Commission enforcement action.  Beba premises its request for relief under the DJA not on any agency action—much less final agency action—against Beba, but rather on the notion that because the Commission has brought enforcement actions against other entities operating in the digital-asset space, the Commission may file an action against Beba.  *See supra* 12.  This is not at all like the situation where the D.C. Circuit found review appropriate because an agency had "provided its final word on the matter short of an enforcement action."  *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 437 (D.C. Cir. 1986) (cleaned up), *as amended* (Sept. 9, 1986); *see Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156, 167 (D.C. Cir. 1997) ("Even where the issue presented is a purely legal one and presumptively fit for review, * * * such an issue may be deemed unfit for review if * * * further

administrative action is needed to clarify the agency's position.") (cleaned up).  Indeed, the complaint acknowledges that the Commission has not taken a position on BEBA tokens.  *See, e.g.*, Compl. ¶ 6 (speculating that the Commission "*will* take the position that BEBA tokens are investment contracts and that the airdrop is a securities transaction subject to registration requirements under the Securities Act of 1933") (emphasis added).  Thus, judicial review now would "disrupt the orderly process of administrative decisionmaking."  *Ciba-Geigy Corp.*, 801 F.2d at 437; *see, e.g.*, *Hodl L., PLLC v. SEC*, No. 3:22-cv-1832, 2023 WL 4852322, at *4 (S.D. Cal. July 28, 2023) (holding that digital-asset-related declaratory judgment claims were not ripe because the Commission had not brought suit against the plaintiff), *appeal pending* (9th Cir. No. 23-55810).

Moreover, "in determining whether a justiciable controversy exists" regarding the filing of a lawsuit that "is contingent upon certain factors," a court "must take into account the likelihood that these contingencies will occur."  *Orix*, 212 F.3d at 897; *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (cleaned up).  Given the absence of any allegation that the Commission has engaged with it, Beba fails to show that a Commission action *against Beba* "is sufficiently likely to happen to justify judicial intervention."  *Orix*, 212 F.3d at 897 (cleaned up).

2.  In addition to its prematurity, Beba's request for relief is unwarranted because it would require adjudication based on facts that do not yet exist.  "Courts customarily deal in specific facts or circumstances drawn with some precision and legal questions trimmed to fit those facts or circumstances; they are not in the business of deciding the general without reference to the specific."  *Am. Fed'n of Gov't Emps. v. O'Connor*, 747 F.2d 748, 755-56 (D.C. Cir. 1984).  Thus, reflecting both "Article III limitations on judicial power" and "prudential reasons for refusing to exercise jurisdiction," "[a] case becomes ripe when it would not benefit from any further factual development

and when the court would be in no better position to adjudicate the issues in the future than it is now." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (cleaned up).  That is true even where the issues presented will ultimately be legal and the agency action final.  *Nat'l Park Hosp. Ass'n*, 538 U.S. at 812 (holding that the issues presented were not ripe because "further factual development would significantly advance [a court's] ability to deal with the legal issues presented") (cleaned up).

Beba is requesting an improper advisory opinion about hypothetical enforcement activity.  This Court should not "adjudicat[e] whether federal law would allow an enforcement action" when that "require[s] * * * determin[ing] the legality of * * * hypothetical situations," particularly with respect to "a fuzzily defined range of enforcement actions that do not appear imminent."  *Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016) (cleaned up).  And because the contours of future enforcement actions are unknown, Beba has at most "carved out" questions that could bear on liability in a potential future enforcement action, but the judicial power may be invoked only to "resolve [an] entire case or controversy," not to "gain a litigation advantage by obtaining an advance ruling" on discrete legal issues.  *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246 (1952) ("[W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted.").  Beba's suppositions about legal arguments that the Commission may raise in potential future enforcement actions are insufficient to establish ripeness.  *See Walmart*, 21 F.4th at 312 (noting "the importance [for ripeness] of an unequivocally expressed position by the government" with respect to the specific actions at issue).

At bottom, Beba invokes the DJA as an improper "means of turning prosecutor into defendant" long before the Commission has made any prosecutorial decisions.  *Energy Transfer*

23

*Partners, L.P. v. FERC*, 567 F.3d 134, 141 (5th Cir. 2009), quoting *Standard Oil*, 449 U.S at 243.  Beba

effectively requests that this Court bless Beba's business by adjudicating the inverse of an

enforcement action that the Commission has not brought—and may never bring—and asks this

Court to do so before even some of the necessary facts and circumstances have crystalized.

> **ii.     Any cognizable harm to Beba from withholding judicial review does not justify judicial intervention at this juncture.**

Beba will suffer no cognizable harm if this Court refuses to provide an advisory opinion.

The request for relief under the DJA is based on the Commission's allegations in complaints filed

against other entities.  But those allegations do not "create adverse effects of a strictly legal kind" for

Beba, which are "required for a showing of hardship," or affect Beba's "primary conduct."  *Nat'l*

*Park Hosp. Ass'n*, 538 U.S. at 809-10 (cleaned up).  Indeed, those allegations "do not command

anyone to do anything or to refrain from doing anything; they do not grant, withhold, or modify any

formal legal license, power, or authority; they do not subject anyone to any civil or criminal liability;

they create no legal rights or obligations."  *Ohio Forestry*, 523 U.S. at 733.  It is only when a court

resolves those allegations and renders a judgment that rights and obligations flow, and then only to

the defendants in that action, not Beba.

Beba's request for relief under the DJA highlights why judicial intervention is inappropriate

now.  Beba cites several district court actions where the defendants have raised various arguments

about why certain digital assets or actions related to those digital assets do not implicate the federal

securities laws.  *E.g.,* Compl. ¶¶ 11, 112, 116, 121.  But those actions demonstrate that a proper

forum exists for arguments about digital assets, if and when enforcement actions regarding those

assets arise.  As the Fifth Circuit held, ripeness principles preclude a hypothetical defendant from

becoming a plaintiff to stop that future lawsuit when the hypothetical defendant "has the ability to

test the government's regulatory position in court by raising its theories as defenses" in an

enforcement action.  *Walmart*, 21 F.4th at 313.  If Beba is charged with violations of the federal

securities laws, it can challenge the Commission's theories then, "when harm is more imminent and more certain." *Ohio Forestry*, 523 U.S. at 734.

There is no cognizable hardship in refusing review now when, consistent with Article III, Beba can raise all of its arguments in any eventual enforcement action. *See, e.g.*, *AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003) ("[T]he burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship to overcome the agency's challenge to ripeness."). And the "expense and annoyance of litigation," even if "substantial," are "part of the social burden of living under government," *Standard Oil*, 449 U.S. at 244 (cleaned up); it "cannot constitute sufficient hardship for ripeness." *TOTAL Gas*, 859 F.3d at 337-38. Finally, even if Beba had alleged cognizable hardship, "[t]he fitness and hardship prongs must be balanced," *Texas*, 497 F.3d at 498, and here the issues presented are entirely unfit for judicial review. *See supra* 20-24.

### 2. Beba lacks standing.

The factors that demonstrate a lack of ripeness also show a lack of standing, which "tracks closely with ripeness" in pre-enforcement cases like this one. *Walmart*, 21 F.4th at 313. The justiciability problem stemming from the prematurity of Beba's DJA request "can be described in terms of standing (whether plaintiff is threatened with imminent injury in fact fairly traceable to the challenged action of * * * defendant), or in terms of ripeness (whether there is sufficient hardship to the parties in withholding court consideration until there is enforcement action)." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (cleaned up). As the Court recently reiterated, an injury "must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *All. for Hippocratic Med.*, 2024 WL 2964140, at *6.

Because Beba fails to allege an actual or imminent injury, it lacks standing. *See, e.g.*, *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 318-19 (5th Cir. 2002). "[T]o ensure that the alleged injury is not too speculative for Article III purposes [a] threatened injury must be certainly impending to

25

constitute injury in fact"; "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up); *see, e.g.*, *Hodl*, 2023 WL 4852322, at *3 (holding that the plaintiff lacked standing to bring digital-asset-related declaratory judgment claims against the Commission because "[t]he possibility that the SEC may file suit against the [p]laintiff is not definite and concrete").  To reiterate, Beba does not challenge any statute or rule that has been applied to it. Rather, Beba premises its standing on a supposed unwritten policy that manifests itself in enforcement actions where the Commission has asserted claims in *other* federal courts that *other* entities violated the federal securities laws.  *See supra* 12.  However, those allegations have not been asserted against Beba, and "a party cannot challenge a statute as-applied unless the statute has been applied to him."  *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006).

Beba is left to allege standing based solely on a supposed "credible threat of enforcement." Compl. ¶ 124.  But there is no standing to seek judicial review of an agency's interpretation of a concededly valid statute before that interpretation results in even preliminary steps that could lead to an enforcement action related to the plaintiff.  In any event, Beba has failed to allege that the supposedly threatened enforcement action is sufficiently imminent.  *See supra* 21-22.  "[M]erely foreseeable future litigation resulting from a statutory interpretation that an agency has adopted in an adjudication is * * * without more * * * too speculative to satisfy Article III's injury-in-fact requirement," as opposed to when "the prospect of impending harm [is] effectively certain."  *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1313-14 (D.C. Cir. 2010).

## CONCLUSION

The complaint should be dismissed for lack of subject-matter jurisdiction.

Dated: July 3, 2024

Respectfully submitted,

*/s/ Jason J. Rose*
Jason J. Rose
Texas Bar No. 24007946
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-1408 (phone)
(817) 978-4927 (facsimile)
rosej@sec.gov

Jeffrey A. Berger (*pro hac vice*)
Illinois Bar No. 6282511
Ezekiel L. Hill (*pro hac vice*)
D.C. Bar No. 1684647
David D. Lisitza (*pro hac vice*)
California Bar No. 225824
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
(202) 551-5100 (phone)
bergerje@sec.gov
hillez@sec.gov
lisitzad@sec.gov

## CERTIFICATE OF SERVICE

I affirm that on July 3, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the Western District of Texas, Waco Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jason J. Rose*
Jason J. Rose