UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| BEBA LLC and <br> DEFI EDUCATION FUND, <br><br> Plaintiffs, <br><br> v. <br><br> SECURITIES AND EXCHANGE COMMISSION <br><br> Defendant | § § § § § § § § § § § § § § Civil Action No. 6:24-cv-153-ADA-DTG |

**BRIEF FOR *AMICUS CURIAE* TEXAS BLOCKCHAIN COUNCIL AND INVESTOR CHOICE ADVOCATES NETWORK IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**CORPORATE DISCLOSURE STATEMENT**

*Amicus Curiae* Texas Blockchain Council ("TBC") is a nonprofit, public interest organization. TBC has no parent corporation, and no publicly held company has a 10% or greater ownership interest in TBC.

*Amicus Curiae* Investor Choice Advocates Network ("ICAN") is a nonprofit, public interest organization. ICAN has no parent corporation, and no publicly held company has a 10% or greater ownership interest in ICAN.

**STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY**[1]

TBC is a nonprofit, public interest organization working to foster growth, innovation, and sensible regulation in the digital asset industry. ICAN (together with TBC "Amici") is a non-profit

---

[1] All parties consent to the filing of this brief. No party's counsel authored this brief in whole or part, and no party or party's counsel made a monetary contribution to fund preparation or submission of this brief.

public interest organization that advocates for expanding access to markets—including markets for digital assets—for underrepresented investors and entrepreneurs who do not share the same access and market power as those with more assets and resources.

Amici have a significant interest in ensuring that the Securities and Exchange Commission's ("SEC") application of the federal securities laws to the rapidly emerging digital asset industry proceeds in a way that protects investors without stifling innovation and growth. This balance is especially important for emerging industries like the digital asset industry. To the extent that the SEC's regulation of these emerging industries imposes burdensome regulation with little or no benefit to the market, the SEC impedes growth and harms individuals and organizations seeking to participate in these industries. This is inconsistent with SEC's stated mission of protecting investors while fostering capital formation.[2] It harms emerging industries, and it harms investors who would like to participate in those industries.

To date, the SEC's ambiguous and expansive application of nearly century-old laws to the digital asset industry has had far-reaching and oftentimes negative consequences.[3] Worse yet, the SEC has regulated not by issuing new regulations—which provide regulatory clarity and allow for public input and participation—but almost entirely through enforcement actions. The vast majority of the time, the SEC extracts a settlement. The SEC then tells only its version of the case—through press releases and other public statements.[4] This prevents the discourse needed between

---

[2] U.S. Securities & Exchange Commission, *About the SEC, Mission* (June 21, 2024), https://www.sec.gov/about/mission (describing "Protecting Investors" and "Capital Formation" as two of the three components of the SEC's mission).

[3] These include the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and other federal securities laws.

[4] In settled cases, the SEC demands that as a condition of settlement, the settling defendant agrees to a gag order preventing it from telling its side of the story. Obvious constitutional concerns aside, this approach further distorts debate around the regulation

government and industry—particularly so in emerging industries. It allows no feedback and offers no plain direction on how other companies can stay out of the SEC's crosshairs. This misguided approach has failed to provide clear guidance to industry participants and investors.

The interests of Amici differ from those of the parties. As stated above, Amici are non-profit organizations advocating for innovation and opportunity in emerging industries. This perspective may not be adequately represented by the positions of either Plaintiffs (a retailer and an education and research organization) or the SEC (a federal government regulatory agency).

## ARGUMENT

The SEC's current regulatory approach harms emerging industries like digital assets by:

- Stifling debate around sensible and cost-effective regulation of these industries;

- Creating greater risk for both the industry and investors, by injecting significant uncertainty into the market since the SEC's "regulation by enforcement" approach fails to offer clear rules and guidance; and

- Depriving the markets of potentially valuable information about the SEC's regulatory activities.

---

of emerging industries. *See, e.g., Sec. & Exch. Comm'n v. Novinger*, 40 F.4th 297, 308 (5th Cir. 2022) (Jones, J. and Duncan, J., concurring) ("If you want to settle, SEC's policy says, [']Hold your tongue, and don't say anything truthful—ever[']—or get bankrupted by having to continue litigating with the SEC. A more effective prior restraint is hard to imagine."); *Sec. & Exch. Comm'n v. Moraes*, No. 22-CV-8343 (RA), 2022 WL 15774011, at *1 (S.D.N.Y. Oct. 28, 2022) ("The threat held over the head of defendants by [the gag rule] is not easily overstated"); Dissent of Commissioner Hester M. Peirce (Jan. 30, 2024) (dissenting from the SEC's decision not to amend the gag rule and stating "The policy of denying defendants the right to criticize publicly a settlement after it is signed is unnecessary, undermines regulatory integrity, and raises First Amendment concerns"), https://www.sec.gov/newsroom/speeches-statements/peirce-nand-013024.

4882-1854-1043.1

The SEC's regulation in this space has taken place almost completely through enforcement, and risks establishing a dangerous precedent that threatens other emerging industries.[5] While refusing to consider and promulgate sorely needed rules and regulations for the digital asset industry, the SEC has filed dozens of enforcement actions. It maintains a web page listing these many enforcement actions.[6] From this page, one can easily click a link and read about only the SEC's version of the enforcement action.

The SEC has engaged in this litany of enforcement actions while refusing to offer critically needed guidance to the public through the rulemaking process. For instance, Chair Gensler stated that he was "pleased" to deny Coinbase Global, Inc.'s Petition for Rulemaking which, if approved, could have provided some of this much-needed guidance.[7] All the while, the SEC's enforcement efforts have ramped up significantly.[8]

The SEC's failure to engage in rulemaking delineating the permissible boundaries of trading in digital assets subjects the cryptocurrency industry, its trading platforms, and investors to unnecessary uncertainty as to what constitutes permissible legal conduct. Chilling legal conduct contravenes public policy. If the SEC were successful in chilling legal investing activities in the digital assets area, investors may be deprived of the opportunity to purchase the investments of

---

[5] For instance, there are indications that the SEC intends to follow the same approach with the Artificial Intelligence industry. *See, e.g.*, Will Kubzansky, *SEC's AI Crackdown Signals Trickle of Cases Will Turn to Flood*, Bloomberg (June 20, 2024), https://www.bloomberg.com/news/articles/2024-06-20/sec-s-ai-crackdown-signals-trickle-of-cases-will-turn-to-flood.

[6] *See* U.S. Securities and Exchange Commission, *Crypto Asset and Cyber Enforcement Actions* (June 20, 2024), https://www.sec.gov/spotlight/cybersecurity-enforcement-actions.

[7] *See* Gary Gensler, Chair, U.S. Securities and Exchange Commission, *Statement on the Denial of a Rulemaking Petition Submitted on behalf of Coinbase Global, Inc.* (Dec. 15, 2023), https://www.sec.gov/news/statement/gensler-coinbase-petition-121523.

[8] *See* U.S. Securities and Exchange Commission, *SEC Nearly Doubles Size of Enforcement's Crypto Assets and Cyber Unit (2022-78)*, Press Release (May 3, 2022), https://www.sec.gov/news/press-release/2022-78.

their choice. Depriving investors of the opportunity to participate in legal investing activity (even if disfavored by the SEC) would cause them harm thereby harming the public interest as well.[9]

As SEC Commissioner Hester M. Peirce has observed, maintaining "regulatory ambiguity" around digital assets "is costly and treacherous for well-intentioned developers and their lawyers."[10] And just days ago, SEC Commissioner Mark Uyeda called the SEC's approach a "disaster"—stating that SEC has "done nothing to provide guidance."[11] As a practical matter, the SEC's ability to increase costs and regulatory risks associated with a particular asset class enables the SEC to discourage investments in that asset class without explicitly prohibiting such investments.

As the SEC Chairman acknowledged in congressional testimony, the SEC is a disclosure-based regulator, and does not have the authority to engage in merit-based regulation:

> For the last 90 years, our capital markets have relied on a basic bargain. Investors get to decide which risks to take, as long as companies provide full, fair, and truthful disclosures. Congress tasked the SEC with overseeing this bargain. We do so through a disclosure-based regime, not a merit-based one.[12]

---

[9] *See Chamber of Commerce of the United States of Am. v. SEC*, 412 F.3d 133, 144 (D.C. Cir. 2005) (loss of opportunity to purchase mutual fund shares constituted a legally cognizable injury).

[10] Commissioner Hester M. Peirce, Remarks before the Investment Advisory Committee, December 2, 2021 ("The SEC has not provided clarity in response to repeated questions on crypto from reputable players but has instead embraced an approach that has been described aptly to me as "strategic ambiguity." Such an approach facilitates enforcement actions, but it is costly and treacherous for well-intentioned developers and their lawyers.").

[11] https://www.msn.com/en-us/money/markets/sec-commissioner-mark-uyeda-admits-their-approach-to-crypto-is-a-disaster/ar-AA1s35Ok?ocid=BingNewsSerp.

[12] Gensler, Gary, Chair, U.S. Securities and Exchange Commission, Testimony Before the United States Senate Committee on Banking, Housing, and Urban Affairs (Sept. 15, 2022), available at: https://www.sec.gov/news/testimony/genslertestimony-housing-urban-affairs-091522.

Prohibiting investments in an asset class, however, transforms the SEC into a "merits-based" regulator—something Congress specifically sought to avoid when it created the SEC.[13] A merits-based regulator has the ability to prohibit investors from exercising their own decisions and runs the risk that the regulator's requirements are applied inappropriately. Congress explicitly precluded a merits-based approach when establishing the SEC because it "wanted to 'avoid the implicit approval by the federal government of the merits of any securities offered for sale to the public."[14]

In short, the SEC has focused tremendous resources on enforcement while focusing almost none on rulemaking. This has harmed the industry greatly by failing to offer any sort of meaningful and comprehensive guidance to those in the industry, as well as those interested in joining or investing in it. It has also allowed the SEC to avoid justifying its own regulatory authority in the first instance—as well as where that regulatory authority stops. To the extent meaningful regulatory dialogue has taken place at all, much of it has consisted of private discussions during the SEC's non-public enforcement investigations. This eliminates countervailing voices and robs the public of much needed debate and guidance.

The SEC maintains its approach to crypto enforcement has been "consistent, principled, and tethered to the federal securities laws and legal precedent."[15] Not so. Because the SEC regulates the crypto space almost entirely through enforcement—with only its version of events making it to the public—industry participants, and legal and compliance professionals seeking to guide those participants, are left with no clear guidance on what the rules of the road are. For

---

[13] Colombo, Ronald J., *Merit Regulation via the Suitability Rules*, 12(1) J. of Int'l Bus. & L. (2013).

[14] *Id.* at 4.

[15] *See* Gurbir Grewal, Director, Division of Enforcement, U.S. Securities and Exchange Commission, *Remarks at SEC Speaks 2024* (Apr. 3, 2024) https://www.sec.gov/news/speech/gurbir-remarks-sec-speaks-04032024.

instance, the public does not know what underlying facts may have led the SEC to allege certain violations but not others. Nor does the public know whether a Defendant had strong defenses but simply no resources to continue defending the case.

This method of *ad hoc* regulation by enforcement is bad for the digital asset industry. It undermines the SEC's self-described mission fostering capital formation. Its investor protection mission is likewise harmed—as increased compliance costs are passed down to investors, and as their investments are put at risk by regulatory uncertainty. In many instances, investors are kept out of the market altogether.

In emerging markets with emerging technologies, this approach is particularly harmful. It is in these markets where clear regulatory guidance is needed. And it is in these markets that industry feedback and public debate about regulation and enforcement is most important so that regulation can occur without stifling innovation and growth. Yet the SEC's approach eliminates much of this debate.

The SEC's flawed approach also allows it to dodge key questions, such as:

- Is the software which underpins digital assets protected by the First Amendment—and if so, how does this protection limit the SEC's enforcement authority?[16]

---

[16] Amanda Tuminelli and Marisa Coppell, *Opinion: Crypto rights are fundamental American rights*, Blockworks (Aug. 21, 2023), https://blockworks.co/news/crypto-fundamental-rights-constitution; *see also* Will Oremus, *Want to regulate social media? The First Amendment may stand in the way*, Washington Post (May 30, 2022), https://www.washingtonpost.com/technology/2022/05/30/first-amendment-social-media-regulation.

- Are digital assets that are scarce by nature—like oil or crops—securities, since this scarcity can lead to increases in value as a result of market fluctuations, rather than managerial efforts?[17]

- Where does the SEC's enforcement authority begin and end, and how is its authority limited or complemented by other federal agencies—such as the CFTC and the Department of Treasury?

These questions only scratch the surface of the novel questions facing the digital asset industry. The industry and the public are much better served with clear rules of the road. These rules should begin with an explicit congressional mandate, and they should be rolled out through a process that allows for feedback from the industry, the investing public, and other key stakeholders. The failure to follow such an approach is damaging to the digital asset industry and those seeking to participate in it.

## CONCLUSION

For these reasons, and on behalf of their members, Amici support Plaintiffs' Opposition to the Defendant's Motion to Dismiss. (ECF No. 31-1).

October 28, 2024

Respectfully submitted,

**GRAY REED**

By: *Chris Davis*
Chris Davis
Joshua Smeltzer
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Tel:   (469) 320-6088
         (469) 320-6225
cdavis@grayreed.com

---

[17] *See, e.g.*, *SEC. v. Belmont Reid & Co.*, 794 F.2d 1388, 1391 (9th Cir. 1986) (instrument not a security where profits depended on "fluctuations of the gold market, not the managerial efforts of [defendant]").

jsmeltzer@grayreed.com

Attorneys for *Amicus Curiae*
Texas Blockchain Council and Investor Choice Advocates Network

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, I electronically filed the above Brief of *Amici Curiae* Texas Blockchain Council and Investor Choice Advocates Network in Support of Plaintiffs' Opposition to the Defendant's Motion to Dismiss by using the District Court's PACER system. I further certify that service will be accomplished by the PACER system.

Dated: October 28, 2024    */s/ Chris Davis*
                           Chris Davis

-9-

4882-1854-1043.1