Case 6:24-cv-00153-ADA-DTG   Document 64   Filed 11/07/24   Page 1 of 11

FILED
November 07, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____lad_____
                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| BEBA LLC and DEFI EDUCATION FUND,<br><br>        Plaintiffs,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION<br><br>        Defendant. | Case No.: 6:24-cv-00153-ADA-DTG |

**BRIEF OF AMICUS CURIAE COIN CENTER
IN SUPPORT OF BEBA AND DEFI EDUCATION FUND'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Peter Van Valkenburgh*
Coin Center
700 K St. NW
Washington, D.C. 20001
peter@coincenter.org

*pro hac vice applications forthcoming

Mark D. Siegmund
Texas Bar No. 24117055
**CHERRY JOHNSON SIEGMUND
JAMES PLLC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710

*Counsel for Amicus Curiae Coin Center*

**TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE                                                                 3

INTRODUCTION                                                                                       3

   I.   THE UNIQUE NATURE OF OPEN SOURCE CRYPTOCURRENCY DEVELOPMENT UNDERSCORES THE IMPORTANCE OF ORGANIZATIONAL STANDING                                                  4

      A. Open Source Development Is Inherently Diffuse and Decentralized     4

      B. Legal and Policy Challenges for Cryptocurrency Development            4

   II.   DEF HAS SUFFERED CONCRETE INJURIES SUFFICIENT FOR ORGANIZATIONAL STANDING                                                                 6

      A. Diversion of Resources Caused by Regulatory Actions                          6

      B. The SEC's Choice to Use the Courts to Develop Public Policy Causes Concrete Injury                                                                                           7

      C. Judicial Intervention Is Warranted When Agencies Close Off Political Remedies                                                                                                         8

      D. Distinguishing from *Lujan* and *Alliance for Hippocratic Medicine*     9

CONCLUSION                                                                                             9

## TABLE OF AUTHORITIES

*Alliance for Hippocratic Medicine v. FDA,*
    No. 22-110 (U.S. 2023) ................................................................................................... 6,7,9

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................................................... 6,7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560-61 (1992) ........................................................................................... 6,7,9

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ............................................................................................................. 7

*Norton v. Southern Utah Wilderness Alliance,*
    542 U.S. 55 (2004) ............................................................................................................... 9

## INTEREST OF AMICUS CURIAE

Coin Center is a Washington, DC-based non-profit research and advocacy center focused on the public policy issues facing cryptocurrency and decentralized computing technologies such as Bitcoin and Ethereum. Our mission is to defend the rights of individuals to build and use free and open cryptocurrency networks: the right to write and publish code – to read and to run it. The right to assemble into peer-to-peer networks. And the right to do all this privately. Coin Center, when necessary, engages in litigation to defend its mission from regulatory overreach. It is involved in two unrelated lawsuits in other Circuits, and therefore has a strong interest in the question of standing for organizations.

## INTRODUCTION

Coin Center submits this brief to address the issue of organizational standing in the context of open source cryptocurrency development. Plaintiff Beba has clear-cut standing. To the extent this Court considers the standing of the DeFi Education Fund ("DEF"), this brief can provide detailed factual and legal analysis on why DEF should be allowed to proceed as a plaintiff in this matter.

## ARGUMENT

There are unique factual and legal issues inherent in reaching organizational standing when plaintiffs are involved in cryptocurrency technologies. We will start with a brief outline of the salient characteristics of cryptocurrency technologies, their developers, and the organizations that advocate for their reasonable regulation and Constitutional rights. Then we will proceed to analyze case law that supports DEF's claim to organizational standing in this case.

## I. THE UNIQUE NATURE OF OPEN SOURCE CRYPTOCURRENCY DEVELOPMENT UNDERSCORES THE IMPORTANCE OF ORGANIZATIONAL STANDING

### A. Open Source Development Is Inherently Diffuse and Decentralized

Cryptocurrency developers are a highly diffuse group of innovators who collaborate on open source software projects. Unlike traditional software developed by centralized, for-profit entities, open source projects are collectively produced, freely shared, transparently published, and intended as community goods rather than proprietary products.

For instance, the Bitcoin Core reference client, the software that makes Bitcoin work, has accumulated over 42,000 unique code contributions from more than 950 unaffiliated individual developers.[1] The software is available under the permissive MIT license, and its development history is publicly accessible on platforms like GitHub.[2] This decentralized approach allows anyone to research, learn, and contribute to the project, enhancing innovation and security through collective effort.[3]

### B. Legal and Policy Challenges for Cryptocurrency Development

While decentralization is a technological strength, it comes with certain legal and public policy vulnerabilities. Networks like Bitcoin are as decentralized as the Internet, and they face similar attempts at control from governments. Like the internet, these networks are highly technical systems and jeopardy from overzealous regulation may be driven by as much as by ignorance over how these systems work as by malice.  And just like the Internet these networks are unowned;

---

[1] Bitcoin, GitHub, https://github.com/bitcoin/bitcoin (last visited Oct. 17, 2024).
[2] *Id.*
[3] *See generally* Peter Van Valkenburgh, *Open Matters: Why Permissionless Blockchains Are Essential to the Future of the Internet*, Coin Center, https://www.coincenter.org/open-matters-why-permissionless-blockchains-are-essential-to-the-future-of-the-internet/ (last visited Oct. 17, 2024).

4

therefore, they need independent champions to educate policymakers, conduct policy research, advocate for preferable policy solutions, and defend against unreasonable or unconstitutional regulatory attacks. That is Coin Center's reason for being, and Coin Center takes it very seriously.

Individual developers often lack the resources to defend themselves fully against legal actions, which can chill innovation and deter participation. Strategic litigation and enforcement can be directed at vulnerable individual contributors, just as a lion would stalk and separate a buffalo from the herd. Others, observing the risk, may abandon participation, disrupting the entire project.

This concern is exemplified by a recent case involving Craig Wright, who initiated several frivolous legal claims against individual Bitcoin developers as well as an organization, the Cryptocurrency Open Patent Alliance (COPA), which is dedicated to pooling and defending intellectual property related to cryptocurrency technology. Banding together, the developers formed the Bitcoin Legal Defense Fund, to raise money for mutual defense. After protracted litigation the developers and COPA prevailed; indeed, a UK court found Wright's claims "totally without merit."[4] Organizational support, from the Bitcoin Legal Defense Fund, COPA, and others was essential in defending these developers and the larger cause.

Organizations like Coin Center and DEF play a crucial role in representing the collective interests of these diffuse communities, providing resources, strategy, and advocacy that individual developers could not muster alone. For example, Coin Center has brought two challenges unrelated to this matter in Federal Courts.[5] In both cases the government has caused injury to Coin Center

---

[4] Tulip Trading Ltd. v. Bitcoin Ass'n for BSV, [2024] EWHC (Ch) 2024 (Eng.).

[5] *See Coin Center v. Yellen*, No. 1:22-cv-00149, Complaint (D.D.C. filed June 21, 2022), https://www.coincenter.org/app/uploads/2022/06/1-Complaint.pdf., and *Coin Center v. Treasury*, No. 5:22-cv-00149, Complaint (W.D. Ky. filed Oct. 12, 2022), https://www.coincenter.org/app/uploads/2022/10/1-Complaint-Coin-Center-10-12-22.pdf.

as well as to the larger field of cryptocurrency developers for whom Coin Center advocates. Similarly, DEF, the DeFi Education Fund, has brought this suit alongside plaintiff Beba in order to defend their mission and the rights of DeFi (which stands for "Decentralized Finance") developers generally who contribute to and support DEF's mission.

## II. DEF HAS SUFFERED CONCRETE INJURIES SUFFICIENT FOR ORGANIZATIONAL STANDING

To establish standing, a plaintiff must demonstrate (1) an injury in fact, (2) causation, and (3) redressability (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). DEF rightly argues that it has suffered concrete injuries in the form of diverted resources.

### A. Diversion of Resources Caused by Regulatory Actions

DEF asserts that it has been compelled to divert significant resources to address policy issues arising from the SEC's actions. This includes legal expenses, advocacy efforts, and educational campaigns that would not have been necessary absent the SEC's regulatory posture.

Under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), an organization suffers an injury in fact when a defendant's actions frustrate its mission and cause a drain on its resources. DEF's mission to support decentralized finance is impeded by the SEC's refusal to provide clear regulatory guidance and its aggressive attempts to make policy in the courts via selective enforcement. Unlike the plaintiffs in *Alliance for Hippocratic Medicine v. FDA,* No. 22-110 (U.S. 2023), DEF is not merely spending to get standing, rather it has been made to spend *because* of the SEC's haphazard process of policy making through the courts and outside of the strictures of the Administrative Procedure Act. The Supreme Court in *Alliance for Hippocratic Medicine* did not overrule *Havens Realty Corp.*; it applied it, but found the plaintiffs could not show concrete injury according to the standard. DEF can show that injury.

**B. The SEC's Choice to Use the Courts to Develop Public Policy Causes Concrete Injury**

Standing is "built on a single basic idea—the idea of separation of powers." *United States v. Texas*, 599 U. S. 670, 675 (2023). The separation of powers doctrine underlying Article III is designed to prevent courts from overstepping into the domains of the legislative and executive branches. However, when an agency like the SEC refuses to engage in rulemaking or to provide a genuine mechanism for affected parties to participate in the regulatory process, and chooses, instead to prove its public policy choices in the courts, it leaves organizations like DEF with no political avenue to address their concerns aside from those very courts. This constitutes a concrete and particularized injury.

In *Massachusetts v. EPA*, 549 U.S. 497 (2007), the Supreme Court recognized that a state had standing to sue the EPA for its inaction because it left the state without recourse to protect its interests. The Court noted that when an agency denies a party the ability to participate in the administrative process, judicial review becomes appropriate.[6]

Similarly, the SEC's refusal to initiate rulemaking or provide clear and consistent guidance on cryptocurrency regulation leaves organizations like DEF and their constituents to bear the brunt of regulatory uncertainty. This uncertainty impedes DEF's mission and requires the diversion of resources to navigate an opaque regulatory landscape.

The SEC's haphazard, unpredictable, and costly approach to cryptocurrency policy-making is longstanding, notable, and widely recognized, including by the two of the sitting SEC

---

[6] *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497, 498-99 (2007) ("EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both "actual" and "imminent," *Lujan,* 504 U.S., at 560, 112 S.Ct. 2130, and there is a "substantial likelihood that the judicial relief requested" will prompt EPA to take steps to reduce that risk, *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 79, 98 S.Ct. 2620, 57 L.Ed.2d 595. Pp. 1452 – 1455.").

commissioners themselves. Commissioner Mark Uyeda recently remarked, "Our policies and our approach over the last several years have been just really a disaster for the whole industry."[7] The SEC, says Uyeda, still has yet to "lay out some clear guidance and interpretations on what falls within and what falls outside the securities laws."[8] Similarly, Commissioner Hester Peirce has characterized the injurious nature of the Commission's approach as "regulation by anxiety."[9] As she says, "We tell people to come down to the office to talk to us about their projects, plug the information they give us into our proprietary security-identifying algorithms, and then send the people home with a court date."[10] The DEF and its supporters are exactly those people; they have been eager to discuss these matters with the SEC in a productive and civil manner; they have expended resources to engage in that process, and they have been rebuffed or worse, targeted with surprise enforcement actions.

### C. Judicial Intervention Is Warranted When Agencies Close Off Political Remedies

Under the Administrative Procedure Act, courts have the authority to "compel agency action unlawfully withheld or unreasonably delayed" (5 U.S.C. § 706(1)). In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Court acknowledged that when an agency fails to take a discrete action it is required to take, affected parties may seek judicial intervention.

DEF's inability to engage with the SEC through standard administrative procedures on issues critical to DEF's mission leaves judicial action as the sole avenue to address its grievances.

---

[7] Anderson P.C., *SEC Commissioner Mark Uyeda Criticizes Agency's Crypto Policy as a "Disaster"*, Lexology (July 18, 2023), https://www.lexology.com/library/detail.aspx?g=77af50e7-1581-4227-88ec-ca1f9113fb6f.
[8] *Id.*
[9] Sarah Wynn, *SEC Commissioner Peirce: 2022 Was "Terrible, Horrible, No Good, Very Bad" for Crypto*, Thomson Reuters (Jan. 20, 2023), https://tax.thomsonreuters.com/news/sec-commissioner-peirce-2022-was-terrible-horrible-no-good-very-bad-for-crypto/.
[10] *Id.*

The SEC's enforcement-based approach effectively shuts out stakeholders from the regulatory process, necessitating court involvement to protect the rights and interests of affected parties.

The SEC may argue that the nature of the securities laws, and the test for an investment contract specifically, has always been a matter of case-by-case, judge-made law-finding. That alone inherently shows that this is, indeed, a matter for the Article III courts to resolve and that there is no separation of powers argument against granting DEF standing in this matter.

### D. Distinguishing from *Lujan* and *Alliance for Hippocratic Medicine*

DEF satisfies the requirement set forth in *Lujan v. Defenders of Wildlife* that a procedural injury must be tied to a concrete interest because the SEC's actions directly impair its mission and operations. Unlike the plaintiffs in *Alliance for Hippocratic Medicine,* who were not directly affected by the FDA's actions,[11] DEF faces immediate harm due to regulatory uncertainty and the potential for enforcement actions against the developers for whom it advocates. Given the SEC's refusal to provide regulatory clarity through traditional administrative channels, recognizing DEF's standing is essential to ensure that affected parties have a means to seek redress.

### CONCLUSION

This Court should hold that the DeFi Education Fund has standing to proceed as a plaintiff in this matter. The SEC's refusal to engage in rulemaking or provide any avenue for participation leaves organizations like DEF with no political means to address the significant impacts of the SEC's actions on their mission and constituents. Judicial review is not only appropriate but

---

[11] Indeed they were statutorily insulated from liability. See *Food & Drug Admin. v. All. for Hippocratic Med.*, No. 23-235, at *21 (June 13, 2024) ("Federal law fully protects doctors against being required to provide abortions or other medical treatment against their consciences-and therefore breaks any chain of causation between FDA's relaxed regulation of mifepristone and any asserted conscience injuries to the doctors."). No analogous protection from SEC enforcement exists for developers who work in the decentralized finance ecosystem and contribute to DEF's mission.

necessary to ensure that agencies remain accountable and that affected parties have a forum to protect their rights.

| | |
|---|---|
| Dated: October 22, 2024 | Respectfully submitted, |
| | /s/Mark D. Siegmund |
| Peter Van Valkenburgh* | Mark D. Siegmund |
| Coin Center | Texas Bar No. 24117055 |
| 700 K St. NW | **CHERRY JOHNSON SIEGMUND** |
| Washington, D.C. 20001 | **JAMES PLLC** |
| peter@coincenter.org | Bridgeview Center |
| | 7901 Fish Pond Road, 2nd Floor |
| *pro hac vice applications forthcoming* | Waco, Texas 76710 |
| | Telephone: (254) 732-2242 |
| | Facsimile: (866) 627-3509 |
| | msiegmund@cjsjlaw.com |

*Counsel for Amicus Curiae Coin Center*

### CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] – Document Filing System, to all counsel of record, on this the 22nd day of October 2024.

/s/ *Mark D. Siegmund*
MARK D. SIEGMUND