**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

**FILED**

November 20, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ cav

DEPUTY

| | |
|---|---|
| BEBA LLC and DEFI EDUCATION FUND,<br><br>                     Plaintiffs,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION; and GARY GENSLER, Commissioner of the Securities and Exchange Commission, in his official capacity,<br><br>                     Defendants. | Case No. 6:24-cv-00153-ADA-DTG |

**DEFENDANTS' REPLY IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION .................................................................................................................1

ARGUMENT .........................................................................................................................1

I.     This Court lacks jurisdiction because sovereign immunity bars plaintiffs' suit.........................1

     A.     Section 702 of the APA does not waive sovereign immunity....................................1

          1.     Section 702 does not waive sovereign immunity for the APA claim ...............1

          2.     Section 702 does not waive sovereign immunity for Beba's DJA request .......3

          3.     Section 702's sovereign-immunity waiver does not apply because plaintiffs challenge matters committed to the Commission's discretion..........................6

     B.     The *ultra vires* exception to sovereign immunity is inapplicable.....................................7

II.     The amended complaint does not present a justiciable case or controversy ............................9

     A.     Plaintiffs have not alleged a justiciable APA claim.............................................9

          1.     The APA claim is not ripe.............................................................9

          2.     Plaintiffs lack standing..................................................................9

              i.     DEF lacks standing........................................................9

              ii.     Beba lacks standing .....................................................11

     B.     Beba has not alleged a justiciable request for relief under the DJA ..........................12

          1.     The request for DJA relief is not ripe...........................................12

              i.     The issues presented are not ripe for judicial decision ........................12

               ii.     Any cognizable harm to Beba from withholding judicial review does not justify judicial intervention at this juncture ...........................13

          2.     Beba lacks standing...................................................................14

CONCLUSION.....................................................................................................................15

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page(s)**

*Abbott Lab'ys v. Gardner,*
   387 U.S. 136 (1967) ...................................................................................................12

*Alabama-Coushatta Tribe of Texas v. United States,*
   757 F.3d 484 (5th Cir. 2014) ........................................................................................5

*Alpine Secs. Corp. v. SEC,*
   No. 18-cv-504, 2024 WL 4681816 (D. Utah Nov. 5, 2024) ...............................12

*Am. Airlines, Inc. v. Herman,*
   176 F.3d 283 (5th Cir. 1999) .................................................................................9, 12

*Apter v. HHS,*
   80 F.4th 579 (5th Cir. 2023) ...............................................................................4, 5, 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................................2

*Ass'n of Irritated Residents v. EPA,*
   494 F.3d 1027 (D.C. Cir. 2007) ..................................................................................7

*Braidwood Mgmt. v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) .................................................................................14, 15

*Ciba-Geigy Corp. v. EPA,*
   801 F.2d 430 (D.C. Cir. 1986) ....................................................................................3

*Consensys Software, Inc. v. SEC,*
   No. 24-cv-00369, 2024 WL 4438969 (N.D. Tex. Sept. 19, 2024) ....................12

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.,*
   144 S. Ct. 2440 (2024) ...................................................................................................6

*Cronin v. FAA,*
   73 F.3d 1126 (D.C. Cir. 1996) ..................................................................................13

*Danos v. Jones,*
   652 F.3d 577 (5th Cir. 2011) ..................................................................................7, 9

*FDA v. All. for Hippocratic Med.,*
   602 U.S. 367 (2024) .........................................................................................9, 10, 14

*Fed. Express Corp. v. United States Dep't of Com.*
   39 F.4th 756 (D.C. Cir. 2022) .....................................................................................8

*Finazzo v. SEC,*
    No. 08-cv-2176, 2008 WL 3521351 (S.D.N.Y. Aug. 5, 2008)................................................7

*FTC v. Standard Oil Co. of California,*
    449 U.S. 232 (1980) ...............................................................................................................6

*Gentile v. SEC,*
    974 F.3d 311 (3d Cir. 2020)................................................................................................6, 7

*GoJet Airlines, L.L.C. v. FAA,*
    743 F.3d 1168 (8th Cir. 2014) ...............................................................................................7

*Gulfport Energy Corp. v. FERC,*
    41 F.4th 667 (5th Cir. 2022) ................................................................................................13

*In re B-727 Aircraft Serial No. 21010,*
    272 F.3d 264 (5th Cir. 2001) .................................................................................................5

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) .............................................................................................................10

*Kirby Corp. v. Pena,*
    109 F.3d 258 (5th Cir. 1997) .................................................................................................9

*Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.,*
    82 F.4th 345 (5th Cir. 2023) ................................................................................................10

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ..........................................................................................................4, 5

*Nat'l Infusion Ctr. Ass'n v. Becerra,*
    116 F.4th 488 (5th Cir. 2024) ........................................................................................10, 11

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004)..................................................................................................................5

*Orix Credit All., Inc. v. Wolfe,*
    212 F.3d 891 (5th Cir. 2000) ...............................................................................................13

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984)..............................................................................................................8-9

*People's Nat'l Bank v. OCC,*
    362 F.3d 333 (5th Cir. 2004) .................................................................................................5

*SEC v. W.J. Howey Co.,*
    328 U.S. 293 (1946) ..........................................................................................................2, 15

*Shell Offshore Inc. v. Babbitt*,
  238 F.3d 622 (5th Cir. 2001) .......................................................................... 3

*Sierra Club v. Peterson*,
  228 F.3d 559 (5th Cir. 2000) .......................................................................... 5

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ..................................................................................... 14

*Texas v. EEOC*,
  933 F.3d 433 (5th Cir. 2019) .......................................................................... 3

*Velesaca v. Decker*,
  458 F. Supp. 3d 224 (S.D.N.Y. 2020) ............................................................ 2

*Walmart Inc. v. DOJ*,
  21 F.4th 300 (5th Cir. 2021) ........................................................................ 12

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ....................................................................................... 3

## Statutes

Administrative Procedure Act 5, U.S.C. §§ 551 *et seq.*

  5 U.S.C. § 551(6) ........................................................................................... 4
  5 U.S.C. § 551(10) ......................................................................................... 4
  5 U.S.C. § 701(a)(2) .................................................................................... 6, 7
  5 U.S.C. § 702 ......................................................................................... 1, 3, 6
  5 U.S.C. § 704 .......................................................................................... 6, 12

15 U.S.C. § 77e ............................................................................................... 5

15 U.S.C. § 77fff .............................................................................................. 5

## Miscellaneous

Strategic Hub for Innovation and Financial Technology, SEC, *Framework for "Investment Contract"*
  *Analysis of Digital Assets* (Apr. 3, 2019) ...................................................... 4

## INTRODUCTION

Plaintiffs' opposition underscores that their amended complaint is fatally flawed. They have failed to sufficiently allege that the supposed "unpublished" Commission policy they challenge actually exists. Like the amended complaint, plaintiffs' opposition does not identify any Commission action—much less final Commission action—such as a rule, statement, or interpretation adopting or otherwise revealing the existence of the supposed policy. And plaintiffs similarly fail to allege that the potential future Commission enforcement action they seek to prevent is likely, much less impending. The lack of agency action—combined with the absence of any credible threat of enforcement—triggers a cascade of jurisdictional barriers. Whether under principles of sovereign immunity, ripeness, or standing, the amended complaint should be dismissed. Plaintiffs and their amici invite this Court to engage in policymaking and issue broad pronouncements about digital assets, but in the absence of a sovereign immunity waiver, a ripe claim, or an injury-in-fact sufficient to establish standing, their request is beyond what Article III allows.

## ARGUMENT

**I.    This Court lacks jurisdiction because sovereign immunity bars plaintiffs' suit.**

**A.    Section 702 of the APA does not waive sovereign immunity.**

**1.    Section 702 does not waive sovereign immunity for the APA claim.**

Plaintiffs concede that they can only rely on the waiver of sovereign immunity in Section 702 of the Administrative Procedure Act (APA) if the supposed policy is final agency action. Opp. 27-30. It is not. Mot. 5-11.

First, there is no Commission policy "that presumes most digital assets are securities and most transactions involving digital assets are securities transactions." Am. Compl. ¶ 19. In contrast to litigants who point to a Federal Register cite or other agency document, plaintiffs do not identify

any published rule, guidance, or other written document that shows the existence of a Commission action adopting or otherwise revealing such a policy. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard * * * asks for more than a sheer possibility"). Instead, plaintiffs cite complaints filed in Commission enforcement actions against other parties as "evidence of the policy." Opp. 30 (cleaned up). But rather than establish or reveal such a policy, these other complaints show only that the Commission is asking other courts to reach findings of fact and conclusions of law about investment contracts under the legal framework established by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). Contrary to the amended complaint's conclusory assertions otherwise, the enforcement actions before other judges demonstrate that the Commission is *not* proceeding by presumption but rather is proceeding based on individual facts-and-circumstances. *See* Mot. 7-8. Nor does plaintiffs' opposition identify any other alleged facts that would render the supposed policy's existence plausible (*see* Opp. 27-30); indeed, it does not dispute that Commissioner statements, as opposed to action undertaken by the Commission itself, are insufficient to sufficiently allege the supposed policy's existence (*see* Mot. 8-9).[1]

Second, even if plaintiffs had sufficiently alleged the existence of a supposed policy—which they do not—such a policy still would not constitute final agency action. The policy that plaintiffs allege would not be the consummation of the Commission's decisionmaking process or create new rights, obligations, or legal consequences. Mot. 9-11. Though plaintiffs' opposition contends that the supposed policy "commits the agency to the view that digital-asset tokens themselves are securities," Opp. 28, what the amended complaint actually alleges is that the supposed policy "*presumes* most digital assets are securities," Am. Compl. ¶ 19 (emphasis added). The notion that the

---

[1] Because the amended complaint fails to allege facts establishing a course of Commission conduct from which the existence of the supposed "unpublished policy" could be plausibly inferred, plaintiffs' reliance on *Velesaca v. Decker*, 458 F. Supp. 3d 224 (S.D.N.Y. 2020), is unavailing.

supposed policy functions as a presumption is fatal to plaintiffs' claim of final agency action.  Far

from "express[ing] [a] definitive position on a general question of statutory interpretation," a policy

predicated on a presumption "expressly reserve[s] the possibility that [the Commission's] view might

change if * * * presented with certain evidence." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438 n.9

(D.C. Cir. 1986) (cleaned up).

Given that a supposed policy of presumption neither contains "mandatory language" nor

"retract[s] an agency's discretion," *Texas v. EEOC*, 933 F.3d 433, 442 (5th Cir. 2019), it is

unsurprising that plaintiffs do not identify a single case in which a court found that the adoption of a

policy of presumption was final agency action.  Plaintiffs cite *Whitman v. American Trucking

Associations*, 531 U.S. 457 (2001), but in that case the Supreme Court explained that "[o]nly if the

[agency] has rendered its last word on the matter in question is its action final," a standard that a

presumption cannot satisfy.  *Id.* at 478 (cleaned up).  Nor can plaintiffs rely on *Shell Offshore v. Babbitt*,

238 F.3d 622 (5th Cir. 2001), because that case did not address the finality of agency action, let alone

whether the adoption of a policy of presumption was final agency action.  Where a "policy statement

* * * leaves the agency the discretion and the authority to change its position in any specific case," it

is not final agency action.  *Texas*, 933 F.3d at 442 (cleaned up).

## 2.     Section 702 does not waive sovereign immunity for Beba's DJA request.

As Beba concedes (Opp. 17), it must identify some agency action affecting it in a specific

way to rely on the APA's waiver of sovereign immunity for its claim under the Declaratory

Judgment Act (DJA).  Mot. 11-15.  Beba incorrectly claims—without citing a single supporting

case—to have identified four agency actions, but none fits the bill.  Opp. 17-18.  First, Beba points

to the supposed "unpublished policy."  But the amended complaint fails to allege facts establishing

its existence (Mot. 6-9; *see supra* 1-2) and, in any event, it would not meet the APA's definition of

agency action (Mot. 11-12).  When agencies engage in policymaking—be it a legislative rule,

interpretive guidance, or policy statement—a litigant can generally point to where the agency articulated the policy. Beba's failure to cite anything along those lines gives away the game. Second, Beba points to statements by the Chair, but his words are not Commission statements (*id.* at 8-9), let alone agency action (*id.* at 11-12). Third, Beba points to complaints filed by the Commission against other parties, but those are not agency actions either; they are not "order[s]," *see* 5 U.S.C. § 551(6), or "sanction[s]," *see id.* § 551(10), as Beba erroneously claims. Mot. 13-14. Fourth, Beba points to a 2019 statement by Commission staff discussing a framework for assessing "whether offers and sales of a digital asset are securities transactions." Strategic Hub for Innovation and Financial Technology, SEC, *Framework for "Investment Contract" Analysis of Digital Assets* (Apr. 3, 2019), https://www.sec.gov/about/divisions-offices/division-corporation-finance/framework-investment-contract-analysis-digital-assets (cited at Am. Compl. ¶¶ 106, 115, 116, 130) (FinHub Framework). But that statement, like statements by the Chair, is not a Commission statement (Mot. 8-9) or agency action (*id.* at 11-12), as the staff statement itself expressly cautioned. *See* FinHub Framework ("This framework represents the views of the Strategic Hub for Innovation and Financial Technology [and] is not a rule, regulation, or statement of the Commission, and the Commission has neither approved nor disapproved its content.").

Moreover, even if Beba had identified agency action, it has not "suffered legal wrong" or been "adversely affected or aggrieved" by it. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (cleaned up). *See* Mot. 14-15. Beba claims (Opp. 18-19) that "the injury [it] complains of falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis" for its request for declaratory relief. *Apter v. HHS*, 80 F.4th 579, 590 (5th Cir. 2023) (cleaned up). But Beba has alleged its disagreement with how the Commission has interpreted "investment contract" in complaints against other parties that will be adjudicated by other courts, which is not a statutory violation by the Commission. Mot. 14-15. And even were Beba's request

for declaratory relief based on a supposed statutory violation, Beba does not explain why its request for declaratory relief is "arguably within the zone of interests to be protected by the statute." *Apter*, 80 F.4th at 592 (cleaned up). They do not identify any statute that the Commission supposedly violated that would support a suit *against the Commission*.

Beba's inability to point to any agency action obviates the need for this Court to address whether that agency action must be final. But Beba is wrong in claiming (Opp. 17) that it need not point to final agency action. The Fifth Circuit has explained that there is no finality requirement when "judicial review is sought pursuant to a statutory or non-statutory cause of action that arises completely apart from the general provisions of the APA," which requires final agency action. *See Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 489 (5th Cir. 2014). Here, however, there is no way for Beba to challenge the supposed Commission policy *except* under the APA. The DJA does not provide an independent cause of action, *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001), and the amended complaint does not identify any underlying statutory or non-statutory cause of action.

The amended complaint refers (¶ 189) to 15 U.S.C. §§ 77e and 77fff, but Beba never explains how those provisions provide "specific authorization" for the pre-enforcement judicial review that Beba seeks, particularly given that those provisions do not create a substantive cause of action for a private party to seek relief against the Commission. *Lujan*, 497 U.S. at 882; *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) ("Where no other statute provides a private right of action, the agency action complained of must be *final* agency action.") (cleaned up); *People's Nat'l Bank v. OCC*, 362 F.3d 333, 336 (5th Cir. 2004) ("Since the relevant administrative agency statutory provision here does not directly provide for judicial review, the APA authorizes judicial review only of 'final' agency action."); *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc) ("The [statute in question] does not provide for judicial review * * * and therefore the general review

provisions of the APA apply by default."); *see also* 5 U.S.C. § 704.  Allowing Beba to evade the APA's requirements by invoking the DJA would eviscerate those requirements.  As the Supreme Court recently reiterated, "§ 702's injury requirement and § 704's finality requirement work hand in hand:  Each is a 'necessary, but not by itself * * * sufficient, ground for stating a claim under the APA." *Corner Post, Inc. v. Bd. of Govs. of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2450 (2024) (cleaned up); *see, e.g., FTC v. Standard Oil Co. of California*, 449 U.S. 232, 238 (1980) (holding that pre-enforcement judicial review of an agency administrative complaint was available "only if the issuance of the complaint was 'final agency action' or otherwise was 'directly reviewable' under * * * the APA").

### 3.  Section 702's sovereign-immunity waiver does not apply because plaintiffs challenge matters committed to the Commission's discretion.

Regardless of whether plaintiffs have identified any agency action, there is no waiver of immunity because the supposed action—a potential future lawsuit against Beba that may never happen—is, at most, a matter committed to the Commission's discretion by law.  Mot. 15-16.  While plaintiffs do not dispute that the decision whether to investigate and the decision whether to bring an enforcement action are committed to the Commission's discretion by law, they claim that Section 701(a)(2) is inapplicable because "the SEC has no discretion to exceed its statutory authority."  Opp. 19.  This tautology makes little sense—Congress did not create "judicially manageable standards" by which to measure whether agencies can and should investigate or bring enforcement actions, but rather expressly committed those decisions to agency discretion and then declined to waive sovereign immunity for lawsuits against the federal government regarding those types of actions. *Gentile v. SEC*, 974 F.3d 311, 319 (3d Cir. 2020).  Moreover, plaintiffs fail to explain how it would be consistent with the statutory text to allow a plaintiff to bring suit to prevent the mere possibility of a future enforcement action when it cannot seek review of a discretionary decision to investigate or bring an enforcement action.  *See id.* at 319-20 ("[T]he exception in § 701(a)(2) pertains to *agency*

*action* that is committed to agency discretion by law, and thus it shields the entirety of an agency action that is committed to agency discretion by law.") (cleaned up).

The cases on which plaintiffs rely to argue that Section 701(a)(2) is inapplicable (Opp. 19) do not address Section 701(a)(2), much less whether it applies to discretionary enforcement decisions. When that question has come before courts, they have concluded that Section 701(a)(2) bars judicial review of agency action committed to agency discretion by law. As a primary example, in *Gentile*, the court concluded that a challenge "to the SEC's decision to open an investigation" which raised the "question of whether the SEC ha[d] legal authority to investigate," was barred by sovereign immunity "because an agency decision to investigate fits within the § 701(a)(2) exception." 974 F.3d at 317, 320; *accord GoJet Airlines, LLC v. FAA*, 743 F.3d 1168, 1173 (8th Cir. 2014) ("[A] federal agency's decision to commence a civil enforcement action is, like the charging decision of a criminal prosecutor, normally deemed to be unreviewable because it is an action committed to agency discretion by law.") (cleaned up); *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1030-37 (D.C. Cir. 2007) (concluding that "EPA's exercises of its enforcement discretion are not reviewable" pursuant to Section 701(a)(2)); *see also Finazzo v. SEC*, No. 08-cv-2176, 2008 WL 3521351, at *6 (S.D.N.Y. Aug. 8, 2008) (concluding that Section 701(a)(2) "provides an independent ground on which to find that sovereign immunity has not been waived" such that a court cannot "review the SEC's discretionary decision to commence an enforcement action"), *aff'd*, 360 F. App'x 169 (2d Cir. 2009).

### B.    The *ultra vires* exception to sovereign immunity is inapplicable.

Even if the *ultra vires* exception to sovereign immunity is viable, it would be inapplicable here because the amended complaint's allegations fail to show that the Commission (or the Chair as a single Commissioner) acted without any authority whatsoever. Mot. 16-17.[2] Plaintiffs ignore the

---

[2] This is a pleading standard, not, as plaintiffs claim (Opp. 20-21), a merits standard. *See, e.g.*, *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) ("*The complaint must allege facts sufficient to establish* that the officer was acting without any authority whatever, or without any colorable basis for the exercise of

high hurdle they face, as "*ultra vires* claims are confined to extreme agency error where the agency has stepped so plainly beyond bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention" of a court. *Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (cleaned up). Because the Supreme Court has "long required" that the action "go beyond mere legal or factual error" and amount to "blatantly lawless" action, an *ultra vires* challenge is "essentially a Hail Mary pass." *Id.* at 764-65 (cleaned up).

Like most Hail Mary passes, plaintiffs' does not succeed. Among its several flaws, plaintiffs' theory goes awry immediately when they incorrectly claim that the Chair has the power to, for example, "initat[e] enforcement actions." Opp. 21. The Commission acts, including when approving enforcement actions, only when a majority of the present Commissioners votes to authorize them, not by the Chair acting alone. Mot. 17. And, to reiterate, plaintiffs have not identified any actual policy, or enforcement activity concerning Beba, that the Commission, let alone the Chair, approved. At most, plaintiffs identify an asserted interpretive error, which is not enough for an *ultra vires* claim under controlling precedent.

Plaintiffs argue—without support—that they have done enough to state an <u>*ultra vires* claim</u> <u>with</u> their assertion that the supposed "unpublished policy" exceeded the Commission's statutory authority because it relied on an incorrect application of the Supreme Court's test for what is an "investment contract." *See* Opp. 21. But it is undisputed that the Commission has the power to adopt policies regarding securities transactions—and that the Chair has authority to vote in favor of a proposed Commission policy (Mot. 17)—and "[a] claim of error in the exercise of that power is * * * not sufficient" to state an *ultra vires* claim. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

---

authority.") (cleaned up; emphasis added). And plaintiffs' claim that the standard is "displace[d]" by the major-questions doctrine (Opp. 21) is also incorrect because that doctrine does not establish a pleading standard, or otherwise provide a basis, for *ultra vires* claims.

102 n.11 (1984).  To invoke the "rarely invocable" *ultra vires* theory, *Am. Airlines v. Herman*, 176 F.3d

238, 293-94 (5th Cir. 1999), a "plaintiff must do more than simply allege that the actions of the

officer are illegal or unauthorized," and plaintiffs have come nowhere close to this high bar, *Danos v.*

*Jones*, 652 F.3d 577, 583 (5th Cir. 2011).  *See also Kirby Corp. v. Pena*, 109 F.3d 258, 269 (5th Cir. 1997)

(concluding that a "dispute over statutory interpretation" is insufficient to permit an *ultra vires* claim)

(cleaned up); *cf. Apter*, 80 F.4th at 588 (permitting an *ultra vires* claim to proceed because the FDA

"never point[ed] to any authority that allows it" to perform the acts in question).

## II.    The amended complaint does not present a justiciable case or controversy.

### A.    Plaintiffs have not alleged a justiciable APA claim.

#### 1.    The APA claim is not ripe.

Plaintiffs fail to demonstrate that the APA claim is ripe.  Mot. 18-19.  They do not point to

any legal obligations that the supposed policy imposes.  Nor do they dispute that they could assert

their arguments against the supposed policy in any potential future enforcement action.  Instead,

plaintiffs argue (Opp. 26) that they have already suffered injury from the supposed policy.  But, as

explained below, the complaint fails to allege such facts.  And their argument that the APA claim is

ripe because they face "credible threats of enforcement" (*id.*) fails because they do not point to facts

demonstrating a threat of enforcement, let alone a credible threat.  *See infra* 14-15; Mot. 25-26

#### 2.    Plaintiffs lack standing.

##### i.    DEF lacks standing.

DEF's claims of injury based on diversion of resources and economic harm are insufficient

to demonstrate standing.  Mot. 19-22.  The diversion-of-resources argument fails because, as the

Supreme Court held in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), a plaintiff cannot

establish standing by changing its allocation of resources in response to an agency action (even when

one actually exists, unlike in this case).  Mot. 19-20.  DEF argues that its claim is different because it

is "based on defensive measures taken to prevent obvious economic harms posed by the SEC's [supposed] policy." Opp. 26. But what the amended complaint actually alleges is that "DEF has dedicated labor and financial resources toward educating the public on the SEC's new policy and counteracting its negative effects." Am. Compl. ¶ 181. And "expending money to gather information and advocate against the defendant's action" is insufficient to establish standing. *All. for Hippocratic*, 602 U.S. at 394.

The allegation that DEF has "dedicated * * * resources to counteracting * * * negative effects" of "the SEC's new policy" (Am. Compl. ¶ 181) is also "a threadbare allegation [that] is insufficient for injury, even at the motion to dismiss stage." *Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*, 82 F.4th 345, 353 (5th Cir. 2023). And DEF's reliance on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), is unavailing because, as the Court explained in *Alliance for Hippocratic Medicine*, "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." 602 U.S. at 396.

DEF's economic harm argument—that it is harmed by a drop in the market price of digital assets it owns as a result of Commission activity—also fails because the amended complaint does not allege facts demonstrating causation or redressability. Mot. 20-22. At the outset, DEF is incorrect (Opp. 24-25) that it is the Commission's burden to disprove DEF's claimed chain of causation between the supposed policy and a decrease in market prices of DEF's digital assets. And DEF's chain of causation is too speculative. Unlike in the *NICA* case on which it relies, DEF's theory does not depend on the "all but certain" responses of "profit-seeking business[es]" "to changing economic incentives." *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 500 (5th Cir. 2024). There, drug manufacturers claimed injury from an HHS action that affected pricing for pharmaceuticals, which allegedly affected their revenues. By contrast, DEF's theory of injury is based on alleged changes in market prices of assets it holds, not revenues of a business it operates.

And those alleged changes depend on speculation about how—in the context of all other relevant information—third-party market participants will react to news about a *potential* Commission investigation and what market price will result (without any allegation about the actual value of the digital assets at the time of the amended complaint's filing). "Predicting [such] decisions [i]s necessarily speculative because they [are] discretionary and involve[] the weighing of a variety of unidentified values and goals." *Id.*

DEF's claimed chain of causation is also unduly attenuated, requiring multiple speculative steps between the supposed Commission policy and any economic injury to DEF. Mot. 21, 22. Market price is determined by the combined actions of multiple third parties and, if accepted, DEF's theory would extend standing to all holders of any investment who claimed that a government policy had—through a speculative and attenuated chain—caused third parties to engage in open market transactions that decreased the market price of the investment. That is not the law.

### ii.    Beba lacks standing

Beba's claims of injury are insufficient to demonstrate standing. Mot. 23-34. Particularly given that the amended complaint does not allege any conduct related to Beba, the claimed causal connection between the alleged policy and Beba is too speculative and too attenuated. *Id.* at 23. Beba offers nothing but conjecture as to the impact of the imagined policy on BEBA tokens, which Beba does not even allege currently trade in the secondary market. *See* Am. Comp. ¶ 75 ("Beba * * * expects a robust secondary market *will emerge* for BEBA tokens.") (emphasis added).

In addition, Beba's claim of injury fails because the Commission has taken no investigative or other steps regarding Beba, and there is accordingly no credible threat of enforcement. *See infra* 14-15; Mot. 25-26. Nor does the supposed policy actually prevent Beba from doing anything. Beba cannot manufacture standing by choosing to refrain from undertaking another BEBA token airdrop because it allegedly fears a potential future Commission enforcement action. Mot. 24. And while

Beba also claims that it faces a credible threat of enforcement for transactions in digital assets other than BEBA tokens, the amended complaint does not include any supporting allegations. *See* Opp. 22-23 (citing Am. Compl. ¶¶ 75-77, 178).

      **B.**      **Beba has not alleged a justiciable request for relief under the DJA.**

           **1.**      **The request for DJA relief is not ripe.**

                  **i.**      **The issues presented are not ripe for judicial decision.**

1. Beba incorrectly claims that its request for declaratory relief is ripe because the Commission has brought enforcement actions against other entities that Beba believes exceed the Commission's statutory authority. Opp. 14. But those actions are not agency action, much less the "*final* agency action," *Walmart Inc. v. DOJ*, 21 F.4th 300, 311 (5th Cir. 2021), needed to render Beba's request for declaratory relief fit for judicial review. *See* Mot. 27; *supra* 2-3; *Am. Airlines*, 176 F.3d at 291 ("[O]ne of the criteria for determining whether an issue is ripe for review [is] whether the challenged agency action constitutes final agency action within the meaning of the APA.") (cleaned up); *see also Consensys Software, Inc. v. SEC*, No. 24-cv-00369, 2024 WL 4438969, at *3 (N.D. Tex. Sept. 19, 2024) (concluding that fitness for review of a claim against the Commission depends on whether the claim challenges "final agency action under Section 704 of the APA"); *Alpine Securities Corp. v. SEC*, No. 18-cv-504, 2024 WL 4681816, at *13 (D. Utah Nov. 5, 2024) (concluding that a Commission enforcement action "was not final agency action").

Beba is left to argue—in a footnote—that "DJA claims are ripe regardless of whether they allege a final agency action." Opp. 17 n.4. But the Fifth Circuit has held that "whether the agency's action is sufficiently final" matters for "fitness for decision" for "pre-enforcement agency actions regardless of whether suit is brought under the APA." *Walmart*, 21 F.4th at 311 & n.10; *Consensys*, 2024 WL 4438969, at *3 (same); *see Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967) (considering whether there is final agency action in deciding whether a declaratory action is ripe). The cases cited

by Beba are not to the contrary, as they do not address whether final agency action is required for a request for declaratory relief to be ripe.  Indeed, *Gulfport Energy Corp. v. FERC*, 41 F.4th 667 (5th Cir. 2022), explains that whether there is final agency action is part of the fitness-for-judicial-decision inquiry and then addresses the finality of agency action in determining ripeness.  *Id.* at 679 & n.25.

2.  Even if Beba had identified final agency action, its request for declaratory relief would still be unfit for judicial review because it has failed to show that a Commission enforcement against it is sufficiently likely to warrant judicial intervention.  Mot. 26.  Beba does not dispute that it must make this showing (*see* Opp. 14-16), and the amended complaint does not allege any investigative or enforcement steps regarding Beba.  Indeed, it concedes that the Commission has not taken a position on BEBA tokens.  *See, e.g.*, Am. Compl. ¶ 6 (speculating that the Commission "*will* take the position that BEBA tokens are investment contracts and that the airdrop is a securities transaction subject to registration requirements under the Securities Act of 1933") (emphasis added).  Beba "simply fails to allege facts that show that [a Commission enforcement action is] likely to occur." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000).

Beba argues that "pre-enforcement challenges based on future business plans impeded by [a] challenged policy" are fit for review (Opp. 15) but here there is no "challenged policy."  Given the amended complaint's failure to sufficiently allege a Commission policy and its concession that the Commission has not taken a position on BEBA tokens, Beba's suppositions about legal arguments that the Commission may raise are insufficient to establish ripeness.  Mot. 26-28.

**ii.    Any cognizable harm to Beba from withholding judicial review does not justify judicial intervention at this juncture.**

Because its request for declaratory relief is unfit for judicial review, Beba must demonstrate that "postponing review [will] impose a hardship [on it] that is immediate, direct, and significant." *Cronin v. FAA*, 73 F.3d 1126, 1133 (D.C. Cir. 1996) (cleaned up).  It fails to do so.  As Beba concedes (Opp. 16-17), its claim of hardship depends on a credible threat of enforcement, which it

has failed to allege sufficiently. *See infra* 14-15; Mot. 25-26; *see also Braidwood Management, Inc. v. EEOC*, 70 F.4th 914, 931 (5th Cir. 2023) ("[T]he correct [hardship] analysis principally tracks the Article III injury analysis."). Moreover, Beba does not dispute that it can raise all of its arguments in any eventual enforcement action—an action that may never happen—which reduces any hardship that Beba would face without judicial review at this time. Mot. 29.

## 2. Beba lacks standing.

Beba lacks standing for its request for declaratory relief because it fails to allege that the supposedly threatened enforcement action is sufficiently imminent to create a credible threat of enforcement. Mot. 29-30. Because no Commission investigative or enforcement steps with regard to Beba are alleged (*id.* at 25-26), Beba is left to argue that it need only allege that an enforcement action is theoretically possible, not that it is likely. Opp. 12. But that argument, which would water down the "credible threat" standard, cannot be squared with the Supreme Court's recent admonition that for purposes of standing an injury in fact must "have already occurred or be likely to occur soon." *All. for Hippocratic Med.*, 602 U.S. at 381. Thus, to establish standing "the threat of future enforcement" must be "substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014).

Beba's reliance on *Braidwood* is also unavailing because in that case the Fifth Circuit explained that "the EEOC's guidance documents and its previous lawsuit against [another] religious employer * * * *conjointly* present[ed] a credible threat" of an enforcement action against the religious employer plaintiffs because their employment policies "facially violate[d] the EEOC's guidance." 70 F.4th at 925 (emphasis added). Here, while Beba points to Commission enforcement actions against other entities, there is no conjoint credible threat, much less to constitutional rights, and Beba fails to allege any Commission guidance or policy remotely similar to the guidance at issue in *Braidwood*. *See supra* 1-3; *see also Braidwood*, 70 F.4th at 928 (acknowledging that the Supreme Court has "treated the threat of future enforcement as case-and-fact-specific"). Indeed, because "standing doctrine is, in

many ways, intended to avoid judicial resolution of cases in which prosecutorial discretion is an alternate solution," "[n]ot every case in which a governmental authority has so far chosen not to prosecute can overcome the standing barrier." *Braidwood*, 70 F.4th at 929 n.27.  And while in *Braidwood*, the Fifth Circuit knew "what the EEOC says violates its guidance and the law" and had "admissions from the EEOC that [the plaintiffs'] current practices violate [the law]," here "declaratory relief [would be] too speculative because, to rule on the matter properly, any decision would be overly reliant on information not before the court."  *Id.* at 929.

## CONCLUSION

The sweeping rhetoric about "crippling consequences," Opp. 1, offered by plaintiffs and their amici is not supported by the allegations in the amended complaint, which fail to sufficiently allege that the supposed policy they attack exists.  Rather, they ask this Court to stray beyond its constitutional role and make programmatic decisions about the status of digital assets under the federal securities laws.  Article III constrains this Court from making abstract policy decisions, such as a declaration that "digital assets are generally not 'investment contracts' under the securities laws," Dkt. 65 at 2, and thereby pretermitting the case-specific analysis called for by the Supreme Court in *Howey*.  The amended complaint should be dismissed for lack of subject-matter jurisdiction on multiple grounds, and this Court should decline to entwine itself in speculative inquiries about a supposed policy that plaintiffs have not shown to exist and a potential future enforcement action that plaintiffs have not shown to be impending.

Dated: November 12, 2024

Respectfully submitted,

*/s/ Jason J. Rose*
Jason J. Rose
Texas Bar No. 24007946
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-1408 (phone)
(817) 978-4927 (facsimile)
rosej@sec.gov

Jeffrey A. Berger (*pro hac vice*)
Illinois Bar No. 6282511
Ezekiel L. Hill (*pro hac vice*)
D.C. Bar No. 1684647
David D. Lisitza (*pro hac vice*)
California Bar No. 225824
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
(202) 551-7724 (Hill)
bergerje@sec.gov
hillez@sec.gov
lisitzad@sec.gov

*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I affirm that on November 12, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the Western District of Texas, Waco Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jason J. Rose*
Jason J. Rose